STATE of Maine

v.

Roy O'HARA.

Supreme Judicial Court of Maine.

Argued May 11, 1993.
Decided May 28, 1993.

Michael E. Carpenter, Atty. Gen., Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Walter Hanstein (orally), Cloutier, Joyce, Dumas & David, P.A., Livermore Falls, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

ROBERTS, Justice.

Roy O'Hara appeals from a judgment entered on a jury verdict in the Superior Court (Oxford County, *Perkins, J.*) convicting him of manslaughter, 17-A M.R.S.A. § 203(1)(A) (Supp.1992). Because the trial court denied O'Hara's request that prospective jurors be questioned further about their relationships with the State's law enforcement witnesses, we vacate the conviction.

At the end of June 1990, Roy O'Hara, a self-described novice with guns, was given a .38 caliber revolver by his wife's grandmother to protect those living in their Norway home from a neighbor who had made serious threats against members of the household. On the evening of July 3, 1990, several people, including Brad Glickman, were gathered in O'Hara's television room playing Nintendo and talking. Shortly after midnight a noise from the outside was heard. Fearing that it might be the neighbor, O'Hara cocked his gun and went outside to investigate. When his search revealed no intruder, O'Hara returned inside and began talking with Glickman. During the conversation, Glickman asked if he could see O'Hara's gun. As O'Hara was handing the gun to Glickman, it fired and the bullet struck Glickman in the chest. Glickman died a short time later.

After O'Hara was indicted for manslaughter, he filed a motion to suppress statements he made to the State Police investigator on the ground that they were involuntary, and to suppress his testimony before the grand jury on the ground that it was tainted by his prior involuntary statements. After a hearing, the court (Brodrick, J.) granted the motion to suppress as it related to the police interrogation, but denied the motion as it related to the grand jury testimony.

I.

At the trial of this case, during jury selection, the court conducted a general *voir dire* in which it asked if any members of the jury panel "have a familiarity with" any of the prospective witnesses in the case. Seven members of the panel responded in the affirmative that they were "familiar with" or "recognized" some of the law enforcement witnesses. The court then asked each of the seven potential jurors whether the fact that they "were familiar with" or "recognized" those witnesses would cause them to believe they would have any difficulty being impartial. Each

of the jurors responded in the negative. Later, the court established that no juror had a family member who is currently engaged in law enforcement. The court also asked whether any members of the panel believed that law enforcement officers have greater credibility than lay witnesses. No affirmative responses were received. Finally, the court asked whether any of the prospective jurors could think of any reason, not addressed by the court, why they could not be fair and objective jurors. Again, no affirmative responses were received.

At the conclusion of its general *voir dire*, the court asked whether the parties had any challenges for cause. O'Hara challenged for cause the seven jurors who had indicated a familiarity with some law enforcement witnesses or, in the alternative, requested further questioning of those jurors regarding their precise relationships with those witnesses. The court denied O'Hara's challenges for cause, as well as his request for further questioning. O'Hara then used five of his nine peremptory challenges to strike potential jurors who had been the subject of his challenges for cause. At the conclusion of the jury selection, O'Hara objected to the jury as selected because of the denial of his request for further questioning.

■■■■ The purpose of *voir dire* is "to detect bias and prejudice in prospective jurors" to ensure that the defendant is tried "by as fair and impartial a jury as possible." *State v. Lovely*, 451 A.2d 900, 901 (Me.1982). To that end, M.R.Crim.P. 24(a) provides:

> The parties or their attorneys may conduct the examination of the prospective jurors unless the court elects to conduct an initial examination itself. If the court elects to conduct an initial examination, when that examination is completed the court shall permit the parties or their attorneys to address additional questions to the prospective jurors on any subject which has not been fully covered in the court's examination and which is germane to the jurors' qualifications.

It is well established that the trial court has broad discretion over the conduct of *voir dire*, and its determination whether a subject germane to a juror's qualifications has been adequately covered during the initial *voir dire* will be upheld absent an abuse of that discretion. *See State v. Bowman*, 588 A.2d 728, 730 (Me.1991); *State v. Lambert*, 528 A.2d 890, 892 (Me.1987).

■■■■ O'Hara contends that the court erred in denying his request to question further the potential jurors concerning their relationships with the law enforcement witnesses. We agree. The mere fact that the jurors stated they could be fair, notwithstanding their familiarity with the law enforcement witnesses, is no substitute for knowing the precise relationship between each juror and each of the prospective witnesses. While it is true, as the State notes, that we have held that a personal, social, or familial relationship with a law enforcement officer will not by itself support a challenge for cause, *see State v. Heald*, 443 A.2d 954, 956 (Me.1982), we have never held that such a relationship with a law enforcement officer expected to testify as a *witness* would not support a challenge for cause. When, as here, members of the jury panel have indicated a familiarity with law enforcement witnesses, the trial court must conduct or permit further questioning concerning the precise nature of potential jurors' relationships with those witnesses. Only after such further questioning will the court have an adequate factual basis to rule on a challenge of those jurors for cause. In effect, the court in this case permitted each juror to be the judge of his or her own qualifications.

Although we vacate O'Hara's conviction for the reason set forth above, we address two other issues raised by O'Hara for "the guidance of the court and counsel in the event of a new trial." *State v. Reilly*, 446 A.2d 1125, 1130 (Me.1982).

## II.

In July 1990 O'Hara voluntarily took a two-hour polygraph examination at the State Police barracks in Gray. Following

the polygraph test, State Police Detective Steven Holt conducted an unannounced interrogation of O'Hara lasting nearly three hours, during which he "continuously browbeat" O'Hara into accepting Holt's version of the events. During the course of the interrogation, O'Hara made incriminating statements. Later in July, Detective Holt questioned O'Hara further, obtaining additional admissions. Evidence of both of Detective Holt's interrogations was suppressed.

On August 8, 1990, Detective Holt telephoned O'Hara and asked if he would be willing to meet Assistant Attorney General Thomas Goodwin at the District Attorney's office in South Paris. O'Hara agreed and met Goodwin at the courthouse. Goodwin informed O'Hara that the grand jury would be considering his case at 10:00 a.m. on August 10, 1990, and invited him to testify. Although he did not respond to this invitation during the meeting, O'Hara testified before the grand jury and again made incriminating statements.

 O'Hara contends that his grand jury testimony was tainted by his involuntary statements made in July and therefore must be suppressed. We disagree. The State bears the burden of proving the voluntariness of a defendant's statement beyond a reasonable doubt. *See State v. Smith*, 615 A.2d 1162, 1163 (Me.1992). "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983). *See also State v. Caouette*, 446 A.2d 1120, 1123 (Me.1982). The trial court's factual determination that a defendant's statement is voluntary is reviewed for clear error and will not be disturbed on appeal unless there is no competent evidence in the record to support it. *See State v. Barczak*, 562 A.2d 140, 144 (Me. 1989).

 A witness's prior involuntary statement does not necessarily preclude the admission into evidence of a subsequent voluntary statement. *See United States v.*

*Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398–99, 91 L.Ed. 1654 (1947); *Leon v. Wainwright*, 734 F.2d 770, 772 (11th Cir. 1984). Rather, the voluntariness of the later statement depends on the "continuing effect" of the coercive practices surrounding the prior statement. *Lyons v. Oklahoma*, 322 U.S. 596, 602, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481 (1944). In this regard, the later statement will be held to be voluntary only if there is a "break in the stream of events ... sufficient to insulate the statement from the effect of all that went before." *Clewis v. Texas*, 386 U.S. 707, 710, 87 S.Ct. 1338, 1340, 18 L.Ed.2d 423 (1967). Factors bearing on whether the coercion surrounding an earlier statement has carried over to a later statement include the amount of time that elapsed between the statements, a change in the place of interrogation, and a change in the identity of the interrogator. *See, e.g., Bayer*, 331 U.S. at 540–41, 67 S.Ct. at 1398–99; *Lyons*, 322 U.S. at 604, 64 S.Ct. at 1213; *Leon*, 734 F.2d at 773; *Remeta v. State*, 300 Ark. 92, 777 S.W.2d 833, 837 (1989).

 There is competent evidence in this record to support the trial court's factual finding that O'Hara's grand jury testimony was voluntary. First, O'Hara's testimony before the grand jury occurred several weeks after his involuntary statements. Second, the place of interrogation was changed from the State Police barracks in Gray to the Oxford County Courthouse in South Paris. Third, the identity of O'Hara's interrogators changed from Detective Holt of the State Police to Goodwin, an Assistant Attorney General. Fourth, O'Hara was fully advised of his *Miranda* rights prior to testifying before the grand jury. Finally, O'Hara was invited rather than compelled to testify before the grand jury. On this record we cannot conclude that the court's finding was clearly erroneous.

### III.

 During its case-in-chief, the State presented evidence concerning an incident that occurred within two weeks before Glickman's death, in which O'Hara's negligent handling of the firearm at issue in this

case caused the gun to fire with the bullet missing his wife's head by a matter of inches. O'Hara contends that the court erred by admitting the evidence of his prior negligent handling of the gun because, under M.R.Evid. 404(b), evidence of a wrongful act is not admissible to prove his character in order to show that he acted in conformity therewith. *See State v. Caulk*, 543 A.2d 1366, 1371 (Me.1988); *Pierce v. State*, 463 A.2d 756, 761 (Me.1983). Such evidence, however, may be admissible for another purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.Evid. 404 advisers' note. The crime with which O'Hara is charged requires the State to prove beyond a reasonable doubt that O'Hara recklessly, or with criminal negligence, caused the death of Brad Glickman. *See* 17-A M.R.S.A. § 203(1)(A). Therefore, the evidence of the prior incident is relevant to O'Hara's knowledge of the risk that the gun involved in this case was capable of inadvertently discharging. Although we find that a portion of this evidence is relevant to an issue in controversy and therefore satisfies the technical requirements of Rule 404(b), we express no opinion as to the ultimate admissibility of this evidence, either in whole or in part. Rather, such a determination may be made only after the trial court's balancing, pursuant to M.R.Evid. 403, of the probative value of the evidence against the danger of unfair prejudice. *See State v. Smith*, 612 A.2d 231, 235 (Me.1992); Field & Murray, *Maine Evidence* § 404.4, at 4–44 (3d ed. 1992).

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.