1997 ME 114

**STATE of Maine**

v.

**Jeffrey STODDARD.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 24, 1997.

Decided May 22, 1997.

---

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Lara M. Nomani, Perkins, Townsend, Shay & Nomani, P.A., Skowhegan, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Jeffrey Stoddard appeals from the judgment entered in the Superior Court (Penobscot County, *Mead, J.*) on jury verdicts of guilty of eluding a police officer, 29 M.R.S.A. § 2501–A(3) (Supp.1993); failing to stop upon an officer's request, 29 M.R.S.A. § 2501–A(2) (Supp.1993); speeding in excess of 30 miles per hour, 29 M.R.S.A. § 1252(4) (Supp.1993); as well as the consolidated but separate charge of operating under the influence of intoxicants, 29 M.R.S.A. § 1312 (Supp.1993).[1] Stoddard contends that the court abused its discretion when it refused to ask potential jurors during voir dire his proposed questions regarding juror bias, erred when it refused to allow him to testify about his willingness to take a blood test after he was released from custody, and erred when it failed to instruct the jury regarding the level of culpability necessary for a conviction on the charge of failure to stop. For reasons hereinafter set forth, we vacate the judgment for failing to stop upon an officer's request. We affirm the judgment as to the other counts and the judgment as to operating under the influence.

[¶ 2] On July 5, 1993, Officer Doug Franklin was in his police cruiser traveling south on Route 7 in Newport. His radar alerted him that a sportscar approaching from the opposite direction was moving at 91 miles per hour, 36 miles per hour in excess of the posted speed limit. As the vehicle approached the cruiser, Franklin turned on the cruiser's blue lights and slowed down so that he could turn to follow the car. According to Franklin, he made eye contact with the driver of the car, Jeffrey Stoddard, and motioned for Stoddard to pull over by pointing his finger at the breakdown lane on Stoddard's side of the road. Stoddard drove past the cruiser and Franklin activated the cruiser's siren and turned to follow. When Franklin got within about 200 yards of Stoddard's car, Stoddard began accelerating. Franklin then alerted his dispatcher that he was engaged in a high-speed chase. Stoddard passed two cars on Route 7 and then made a right turn on Old County Road. When Franklin reached the intersection of Old County Road and Fire Lane 21, he saw dust in the air and the brake lights from Stoddard's car traveling down the fire lane. Franklin stopped his cruiser at the intersection and called for backup. Before other officers arrived, a pickup truck approached Franklin's cruiser on Fire Lane 21. Franklin motioned the driver of the truck to stop because he recognized the driver as the man he had signaled to stop on Route 7. Franklin asked Stoddard what had happened to the sportscar and Stoddard replied that he had just come from his brother's residence on Fire Lane 21 and did not know what Franklin was talking about. Franklin noticed the smell of alcohol on Stoddard's breath and saw that Stoddard's eyes were glassy and red.

[¶ 3] Officer Christopher Grotton, who had just arrived on the scene, conducted an OUI evaluation. Grotton performed the horizontal gaze nystagmus test and found that Stoddard had the "four clues" indicating intoxication. Stoddard failed both the walk and turn and the one-legged tests. Grotton asked Stoddard to take a breath test but Stoddard refused. Grotton explained the implied consent form and Stoddard said he understood the form and signed it.

[¶ 4] While Grotton was performing the OUI evaluation, Franklin attempted to locate the car that Stoddard had been driving on Route 7. Following car tracks through the high grass he found the car parked behind Stoddard's brother's trailer. Franklin then placed Stoddard under arrest for eluding a police officer and speeding in excess of 30

---

1. The sections cited above have since been repealed by P.L.1993, ch. 683, § A–1 (effective January 1, 1995), and replaced by 29–A M.R.S.A. § 2414(3) (1996) (eluding a police officer); 29–A M.R.S.A. § 2414(2) (1996) (failing to stop); 29–A M.R.S.A. § 2074(3) (1996) (speeding in excess of 30 miles per hour); and 29–A M.R.S.A. § 2411 (1996) (operating under the influence).

miles per hour. When Franklin asked Stoddard why he had tried to outrun the cruiser, Stoddard said he did it because he could not afford a speeding ticket.

[¶ 5] At the trial Stoddard admitted that he was traveling up to 100 miles per hour on Route 7, but stated that he did not see Franklin's vehicle in the opposite lane or Franklin's signal to pull over. Although Stoddard noticed Franklin's flashing blue lights behind him as he was turning onto Old County Road, he did not know that Franklin was pursuing him. He parked his car in the grass behind the trailer just in case the police were looking for him and in the hope that the police would not find the car. The jury found Stoddard guilty of all four offenses.

I.

[¶ 6] Stoddard contends the court abused its discretion when it failed to ask the jury array the questions that Stoddard proposed. Prior to the trial Stoddard submitted a list of 16 questions for voir dire. After questioning the jury itself, the court refused to ask Stoddard's questions. Specifically, Stoddard argues that the court failed to ask questions that would reveal bias in favor of law enforcement officers, bias against people charged with OUI, and juror familiarity with OUI testing procedures. We disagree.

[¶ 7] "The purpose of voir dire is to detect bias and prejudice in prospective jurors to ensure that the defendant is tried by as fair and impartial a jury as possible." *State v. O'Hara*, 627 A.2d 1001, 1003 (Me.1993) (quotations omitted). Maine Rule of Criminal Procedure 24(a) provides that when the court conducts an initial examination of potential jurors, it "shall permit the parties or their attorneys to address additional questions to the prospective jurors on any subject which has not been fully covered in the court's examination and which is germane to the jurors' qualifications." The trial court, however, "has broad discretion over the conduct of voir dire, and its determination whether a subject germane to a juror's qualifications has been adequately covered during the initial voir dire will be upheld absent an

abuse of that discretion." *O'Hara*, 627 A.2d at 1003 (citations omitted).

### A. Bias in Favor of Law Enforcement Witnesses

[¶ 8] The court did not abuse its discretion in refusing to ask the potential jurors whether they would give greater weight to the testimony of police officers than they would the testimony of an ordinary citizen. During the jury selection the court read the charges against Stoddard to the jury array. The court asked the potential jurors if they or members of their families were employed in law enforcement and asked if they knew Stoddard or any of the law enforcement witnesses. When some members of the array said that they were involved with law enforcement or knew the officers who would be testifying, the court asked each member about the nature of his or her relationship to law enforcement or the extent of his or her familiarity with the witnesses. The court also asked whether, in light of the charges against Stoddard, any juror had personal beliefs or religious convictions that would make it difficult for the juror to hear the evidence impartially. Finally, the court asked if there was any reason the jurors could not fairly and impartially evaluate the evidence or apply the court's instructions given the charges in Stoddard's case. These questions were sufficient to disclose facts that would give rise to potential juror bias in favor of law enforcement. *See O'Hara*, 627 A.2d at 1003 (court must allow defendant to inquire about the nature of jurors' admitted relationship with law enforcement witnesses in order to obtain factual basis to rule on challenges for cause).

### B. Bias Against People Charged with OUI

[¶ 9] The court did not abuse its discretion in refusing to ask questions about whether any jurors or their families or friends had been in accidents involving a drunk driver. The court explained to the jurors the nature of the charged offenses including the OUI charge. The court then asked the potential jurors whether they had any personal beliefs that would prevent them from hearing the evidence fairly, and whether there was any reason the jurors could not

act impartially in light of the issues in the case. Although the court's questions were generalized, they were sufficient to reveal any bias. *See State v. Lambert,* 528 A.2d 890, 892 (Me.1987) (court did not abuse its discretion by refusing to allow defendant to question jurors about antihomosexual bias when court's initial questioning was adequate to reveal such bias).

### C. Familiarity with OUI Tests

[¶ 10] The trial court did not abuse its discretion in refusing to allow Stoddard to question the potential jurors about whether they had ever taken a breath or blood-alcohol test or field sobriety tests. The court's general questions about the jurors' ability to evaluate the evidence impartially in light of the OUI charge were sufficient to address the potential that the jurors might have past experiences that could hinder their ability to interpret the evidence regarding OUI tests.

### II.

[¶ 11] Stoddard contends that even though he did not have admissible evidence of the test results, the court erred when it refused to allow the defense to ask questions on Stoddard's redirect examination about the fact that he took a blood test sometime after he was released from custody. In response to a question from the State on cross-examination, Stoddard testified that he refused to take a breath test because he wanted a blood test instead and that he did take a blood test on his own later. The court refused to allow further questioning on the ground that "[t]he fact that the test was taken, [without] introducing the results, raises more questions than it does answers." Stoddard argues that the evidence about his willingness to take a blood test was probative of Stoddard's lack of intoxication because such willingness would not be present in a person who believes he is under the influence of alcohol.

[¶ 12] "The court has wide discretion in making determinations of relevance and has the authority to exclude even relevant evidence if its admission would result in confusion of the issues, misleading the jury, or delay and waste of time." *State v. Jones,* 580 A.2d 161, 162 (Me.1990) (citations omitted);

M.R.Evid. 403. Stoddard's willingness to take a blood test after his release has limited probative value regarding his state of intoxication at the time of the incident. The court did not abuse its discretion by determining that the limited probative value of Stoddard's proffered testimony was outweighed by the risk of confusion that would result from its admission.

### III.

[¶ 13] Stoddard contends that the court erred because it did not instruct the jury that to convict Stoddard of the failure to stop for a police officer, the jury had to find that Stoddard acted with a culpable mental state. The court's instruction regarding the charge of failure to stop consisted of the following: "The law provides that it is unlawful for the operator of any motor vehicle to fail or refuse to stop that vehicle upon request or signal of any uniformed law enforcement officer." Although Stoddard did not object to the instructions at the trial, he argues that *State v. Dana,* 517 A.2d 719 (Me.1986), nevertheless requires that we vacate his conviction for failure to stop. We agree.

[¶ 14] When, as here, a defendant challenges a court's jury instructions without an objection to those instructions in the trial court, we review the instructions only for obvious error. *State v. Googins,* 640 A.2d 1060, 1062 (Me.1994) (citation omitted). We review "the instructions as a whole to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Daniels,* 663 A.2d 33, 36 (Me.1995) (quotations omitted). To vacate a judgment on the basis of obvious error the defendant must show that the offending instruction " 'constituted highly prejudicial error tending to produce manifest injustice.' " *State v. Weidul,* 628 A.2d 135, 137 (Me.1993) (quoting *State v. Quint,* 448 A.2d 1353, 1355 (Me.1982)).

[¶ 15] The court's failure to instruct the jury regarding a culpable mental state for the offense of a failure to stop for a police officer constitutes obvious error. In *Dana* we vacated the defendant's conviction for the offense of passing or attempting to pass a

police officer in violation of 29 M.R.S.A. § 2501–A(4) because the trial court failed to instruct the jury that an intentional or knowing state of mind is an essential element of the offense. 517 A.2d at 720–21. Although the statute's definition of the offense did not specify a necessary level of culpability,[2] we concluded that the language and context of the statute negated any inference that the legislature intended to hold motorists strictly liable for the acts described in the statute. "[T]he legislature by penalizing refusing to stop, attempting to elude, and passing or *attempting* to pass a roadblock intended to punish persons who act with a certain mental state. This conclusion is reinforced by our recognition that penal statutes must be strictly construed." *Id.* at 721 (citation omitted). Because the trial court in *Dana* failed to instruct the jury regarding one of the necessary elements of the offense, the defendant was denied "the right to have the jury test the evidence to determine if each element had been established beyond a reasonable doubt" and was denied a fair trial. *Id.*

■ [¶ 16] The offense of failure to stop is provided in the same statute that we found in *Dana* to require an intentional or knowing state of mind.[3] Here the court instructed the jury that "it is unlawful for the operator of any motor vehicle to fail or refuse to stop that vehicle upon request or signal of any uniformed law enforcement officer." Although the court followed the statute's language, it erred by failing to instruct the jury that an intentional or knowing state of mind is a necessary element of the offense. Pursuant to the court's instructions, the jury could have convicted Stoddard of his failure to stop without necessarily finding that he saw Franklin's cruiser or his signal to stop.

Thus, Stoddard was deprived of the right to have the jury test the evidence to determine if he acted intentionally or knowingly when he failed to stop for Franklin's signal on Route 7.

The entry is:

Judgment on Count II of CR–93–588 vacated; remanded for further proceedings consistent with the opinion herein. Judgment as to Counts I and III of CR–93–588 affirmed. Judgment as to CR–93–640 affirmed.

---

**2.** 29 M.R.S.A. § 2501–A provided in relevant part:

    **2. Failure to stop.** It is unlawful for the operator of any motor vehicle to fail or refuse to stop that vehicle upon request or signal of any uniformed law enforcement officer. Failure to comply with this subsection is a Class E crime.

    **3. Eluding an officer; written policies.** Whoever, after being requested or signaled to stop, attempts to elude a law enforcement officer by driving a vehicle at a reckless rate of speed which results in a high-speed chase between the operator's vehicle and any law enforce-

ment vehicle using a blue light and siren is guilty of a Class C crime. . . .

    **4. Passing a roadblock.** It is unlawful for the operator of any motor vehicle to pass or attempt to pass a roadblock, clearly identifiable as a police roadblock, without authorization. Failure to comply with this subsection is a Class C crime. . . .

This statute has been repealed by P.L.1993, ch. 683, § A–1 (effective January 1, 1995) and replaced by 29–A M.R.S.A. § 2414 (1996).

**3.** See text of statute in note 2.