**STATE of Maine**

v.

**Yvonne MAZEROLLE and Hugh Torrey.**

Supreme Judicial Court of Maine.

Argued May 12, 1992.
Decided Sept. 3, 1992.

R. Christopher Almy, Dist. Atty., Jeffrey Silverstein (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Martha J. Harris (orally), Paine, Lynch & Harris, P.A., Bangor, for Yvonne Mazerolle.

Bruce Mallonee (orally), Rudman & Winchell, Bangor, for Hugh Torrey.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

The defendants, Yvonne Mazerolle and Hugh Torrey, by their appeals from the judgments[1] entered in the Superior Court (Penobscot County, *Beaulieu, J.*) on jury verdicts finding Mazerolle guilty of three counts and Torrey of six counts of gross sexual misconduct in violation of 17–A M.R.S.A. § 253 (Supp.1988),[2] challenge a number of evidentiary rulings by the trial court, certain of the court's instructions to the jury, and the sufficiency of the evidence to sustain the jury verdicts. We affirm the judgments.

The defendants are parents of three minor daughters. At the time of the trial in July 1991, the children were aged nine years, seven years and five years. After a voir dire examination of the children out of the presence of the jury, the court determined that the nine-year-old and seven-year-old were qualified to be witnesses but the five-year-old was not. The jury heard evidence from the nine- and seven-year-old children that on a number of occasions between approximately December 1988 and September 1989, after their mother had restrained them, their father had touched their "privates" and with various kitchen utensils had made direct contact with their sexual organs. Richard Carrion, a neighbor, testified that on one occasion when he visited the defendants' home, he found Torrey in a sexually suggestive position with one of the children.

### 1. Competency Determinations

Both defendants contend that because the children did not understand the obligation of the oath or the importance of telling the truth, the trial court erred in finding that the nine-year-old and seven-year-old were qualified to testify. They argue that the defendants should have been allowed to cross-examine the children as to claimed inconsistencies in their responses to the court. M.R.Evid. 601(b) provides:

> A person is disqualified to be a witness if the court finds that (1) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, (2) the proposed witness is incapable of understanding the duty of a witness to tell the truth, (3) the proposed witness lacked any reasonable ability to perceive the matter, or (4) the proposed witness lacks any reasonable ability to remember the matter.

1. In response to the oral motion of all the parties, the trial court joined these cases for trial.

2. At the time of the present case, section 253 read in pertinent part:
 A person is guilty of gross sexual misconduct if
 1. If he engages in a sexual act with another person and;
 . . . .
 B. The other person, not his spouse, has not in fact attained his 14th birthday[.]

Section 251, in pertinent part, defines a "sexual act" as:
 Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

We have previously stated that "a child of any age is competent to be a witness unless disqualified." *State v. Hussey*, 521 A.2d 278, 280 (Me.1987). A court's decision regarding a child's competency to testify is a factual one and is reviewed for clear error. *State v. Gordius*, 544 A.2d 309, 311 (Me. 1988). A review of the court's voir dire examination of the children reflects that they clearly understood what it meant to tell the truth, that it is wrong to tell a falsehood, and that it was their duty when testifying to tell the truth. As a result, the court's determination that the children qualified as witnesses was not clearly erroneous. *Id.* The court also properly ruled that the issue before the court on its voir dire examination of the children was to determine if they were qualified to be witnesses and that the issue of their credibility as witnesses would be for the jury to resolve. *Hussey*, 521 A.2d at 281.

### 2. Expert Testimony

■ Defendants next contend that Dr. William O'Donahue, an expert in child psychology, should have been allowed to testify on the psychological phenomena of fabrication, suggestibility, and cognitive dissonance. A trial court's evidentiary rulings will stand unless the court clearly erred or abused its discretion. *See State v. Anaya*, 438 A.2d 892, 894 (Me.1981); Field & Murray, *Maine Evidence* § 702.1 at 171 (1976). M.R.Evid. 702 gives the trial court discretion as to whether expert testimony should be made available to a jury. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

As we stated in *State v. Flick*, 425 A.2d 167, 170 (Me.1981):

> The presiding justice may exclude an expert's opinion under M.R.Evid. 702 if he finds that it would not be within the expert's specialized knowledge or would not be helpful to the jury. He may also

exclude it if he finds it irrelevant under M.R.Evid. 401 and 402, or if its probative value would be outweighed by the countervailing considerations of M.R.Evid. 403.

Dr. O'Donahue was examined outside the presence of the jury to determine whether he would be allowed to testify on these phenomena.

■ On the issue of fabrication, Dr. O'Donahue's proffered testimony was a generalized analysis of the allegations made by the children based on the available literature and his own experience, and he opined that because the children's allegations involved unusual elements not found in a typical child abuse case, such allegations could be projections of childhood fantasies. We have noted that "[i]mpressions gleaned from clinical experience or individual case studies concerning the possibility of false allegation, offer no inherent advantage over the knowledge possessed by ordinary lay people." *State v. Gordius*, 544 A.2d 309, 311 (Me.1988). The jury was capable of making its own conclusions about the believability of the children's allegations without the need for expert testimony on the possibility that the children were making them up. *Cf. State v. Fernald*, 397 A.2d 194, 197 (Me.1979) (jury capable of making an intelligent assessment of the reliability of the testimony given by eyewitnesses without need of expert testimony as to how stress may affect perception). The court did not abuse its discretion in determining that Dr. O'Donahue's proposed testimony on fabrication would not be helpful to the jury in making its findings.

■ As to the issues of cognitive dissonance and suggestibility, there is some confusion in the record as to the court's rulings. The court ruled that Dr. O'Donahue would be allowed to testify that the children's later accusations could be accounted for on the basis of cognitive dissonance, a psychological phenomenon that the witness described essentially as the motivation of an individual to provide a coherent, consistent explanation of a confusing and discordant experience in order to make some

sense of that experience. Despite that ruling, the defendants never sought to present such evidence to the jury.

The court's ruling on suggestibility and its applicability to this case is far less clear than that relating to cognitive dissonance. Were we to assume that the court ruled that such testimony could not be offered to the jury, we could not on this record find the court had erred. Dr. O'Donahue, in an offer of proof, described suggestibility as involving factors that arise between an event and a report of that event and that can influence the report. For example, an adult's reaction to a child's report of sexual abuse could influence a later interview of the child. He also stated that in response to suggestion it is more likely than not that children will make errors of omission, that is, leave things out, rather than errors of commission. Further, he stated that in this case the children added details rather than left out details. There was no offer of proof that the children's reports were influenced by suggestion. Accordingly, the court properly could have ruled that the phenomenon of suggestibility had little relevance or probative value in this case. *See State v. Philbrick*, 436 A.2d 844, 861 (Me.1981) (to be admissible proffered expert testimony must be relevant and helpful and avoid confusion of fact finder); *see also State v. Tellier*, 526 A.2d 941, 943–44 (Me.1987) (court properly excluded expert testimony that false confessions do occur).

On the record before us, we decline to speculate whether all of the statements made by the trial court during a long and confusing discussion that fills fifty pages of the transcript of the trial proceedings accurately reflect the law in every detail. For our purposes, it is sufficient to note the issue relating to cognitive dissonance was not preserved by the defendants, and if the issue of suggestibility were preserved by the defendants, we find no clear error in disallowing its admission.

The defendants contend that the court erred in ruling that if Dr. O'Donahue testified on the phenomena of cognitive dissonance and suggestibility, the State would be allowed to cross-examine Dr. O'Donahue on the information contained in the history of the children's treatment. They argue that the history, which contained reports from the Department of Human Services and included statements made by the defendants' five-year-old child to the Department of Human Services workers, was inadmissible hearsay and that the court's ruling forced the defendants to limit Dr. O'Donahue's testimony to the exclusion of any testimony on cognitive dissonance and suggestibility.

Nothing in the record reflects that the treatment history at issue was before the court. However, M.R.Evid. 803(4) establishes that statements made for medical diagnosis or treatment are not excluded by the hearsay rule. Moreover, the fact that the history in this case may have contained hearsay does not automatically prevent its use on cross-examination.

> On cross-examination the opponent is entitled to elicit any factual or expert material upon which the expert has relied regardless of its status as hearsay. Such evidence is relevant not for its truth, but as the basis for the opinion to test its credibility.

Field & Murray, *Maine Evidence* § 703.2 at 276. The record reflects that in forming his opinion on the possible effect of either cognitive dissonance or suggestibility on the children's allegations, Dr. O'Donahue examined the treatment history of the children. Although he may have ultimately rejected many of the statements made in the children's treatment history, it was not error for the trial court, based on the record before it, to make its preliminary ruling that the State could examine Dr. O'Donahue on information contained in the history of the children's treatment, which he had reviewed.

### 3. Discovery Violation

Mazerolle contends the trial court erred in denying her motion for a mistrial as a sanction for the State's claimed discovery violation. She argues that the testimony of one of the children that Mazerolle had "told us not to tell anything or we'd be

in big trouble" was automatically discoverable under M.R.Crim.P. 16[3] and that she was unfairly surprised and prejudiced by it. The record reveals that the court's factual finding that the statement was not available to the State prior to the child's testimony at the trial of this case was not clearly erroneous, *Lewisohn v. State*, 433 A.2d 351, 354 (Me.1981), and the court did not abuse its discretion in refusing to impose the requested sanction. *State v. Reeves*, 499 A.2d 130, 133 (Me.1985); M.R.Crim.P. 16(d).

### 4. Exclusion of Reputation Evidence

 Mazerolle next contends that the court erred in determining that there was an insufficient foundation for the proffered testimony as to Richard Carrion's reputation for truthfulness. M.R.Evid. 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence of reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.

Reputation testimony must embody the "collective judgment of the community." Field & Murray, *Maine Evidence* § 608.1 at 212 (1987), and be "derived from a group whose size constitutes an indicium of inherent reliability." *State v. Doherty*, 437 A.2d 876, 879 (Me.1981). An opinion on reputation is considered sufficiently reliable "only when that opinion is held widely in a community of significant size." *Id.* We review the exclusion of such evidence for an abuse of discretion. *Id.*

 The proffered testimony in this case was that six individuals in Carrion's town of residence had told the witness Carrion was someone "to stay away from" and several others had told the witness that Carrion was "not really very honest, you've really got to watch out for him." We cannot say on this record that the trial court abused its discretion in ruling that Mazerolle had failed to establish a sufficient foundation for the admission of the proffered testimony.

 Mazerolle also contends that the court should have allowed her to present evidence of her own reputation in the community for truthfulness. M.R.Evid. 608(a)(2) states that a witness's reputation for truthful character can only be shown after the witness's character has been attacked by reputation evidence or otherwise. Even vigorous cross-examination of a witness on the consistency of her story is not enough to allow rehabilitation. *See* Field & Murray, *Maine Evidence* § 608.3 at 216 (1987); *see also State v. Wells*, 423 A.2d 221, 226 (Me.1980) (where defendant-witness's credibility is not attacked directly by character evidence but is merely placed in jeopardy by contradiction from other witnesses, evidence of reputation for truth and veracity not admissible). Here, the State subjected Mazerolle to a limited cross-examination. It offered no evidence relating to or attacking Mazerolle's character for truthfulness. On this record the court properly excluded the evidence proffered by Mazerolle.

### 5. Admission of Torrey's Forgery Conviction

 We find no merit in Torrey's contention that the court erred by allowing the State to impeach his testimony with evidence of his past conviction for forgery. We review the admissibility of prior convictions for impeachment to see whether the court applied the correct legal standard or

---

**3.** M.R.Crim.P. 16(a) states, in pertinent part:
 **(a) Automatic Discovery.**
 (1) *Duty of the Attorney for the State.* The attorney for the state shall furnish to the defendant within a reasonable time:
 (A) A statement describing any testimony or other evidence intended to be used against the defendant which:

 ....
 (ii) Resulted from any confession, admission, or statement made by the defendant;
 ....
 (B) Any written or recorded statements and the substance of any oral statements made by the defendant.

**74**

whether it abused its discretion. *State v. Hanscome*, 459 A.2d 569, 572 (Me.1983). Torrey concedes, as he must, that because the conviction was less than fifteen years old and involved dishonesty, it was admissible under M.R.Evid. 609(a)(2) and (b). There is nothing in this record to suggest that the court did not properly balance the probative value of this evidence against its prejudicial effect or that it abused its discretion in allowing the introduction of Torrey's conviction.

*6. Jury Instructions*

■ Nor do we find merit in Mazerolle's contention that the court erred in rejecting her proposed instruction on the need to carefully scrutinize uncorroborated testimony. A party is not entitled to have a requested instruction when, as here, it is sufficiently covered by an instruction actually given and the refusal does not prejudice the requesting party. *State v. Bessey*, 423 A.2d 244, 245 (Me.1980).

The jury having specifically found Mazerolle not guilty of all counts related to alleged sexual acts occurring on September 15, we need not address her contention that her challenge to the State's rebuttal remarks relating to that incident were not properly addressed by the court in its instructions to the jury.

*7. Sufficiency of the Evidence*

■ Finally, we find no merit in the defendants' contention that the evidence was insufficient to convict them of gross sexual misconduct. We review the record to determine whether the evidence is sufficient for a jury rationally to have found that the defendants were guilty beyond a reasonable doubt. *State v. Howes*, 432 A.2d 419, 424 (Me.1981). Any conflicts in the evidence are to be resolved in favor of the State. *Id.* The testimony of the defendants' children describing in detail the sexual acts perpetrated on them by their parents and the testimony given by the defendants' neighbor provide sufficient evidence to support the jury's verdicts.

The entry is:

Judgments affirmed.

All concurring.