STATE of Maine

v.

**John WRIGHT.**

Supreme Judicial Court of Maine.

Argued May 15, 1995.

Decided July 3, 1995.

David W. Crook, Dist. Atty. and William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

James R. Bushell (orally), Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

John Wright appeals from the judgments entered in the Superior Court (Somerset County, *Chandler, J.*) following jury verdicts convicting him of robbery,[1] 17–A M.R.S.A. § 651 (1983), and assault,[2] 17–A M.R.S.A. § 207 (1983).[3] Contrary to his assignment of errors on appeal, Wright's right to a fair trial was not prejudiced. We affirm the judgments.

The jury could have found the facts as follows: On November 7, 1986, Billy McManus, Terry Leet and Wright spent most of the day driving around in Leet's van, drinking coffee brandy and milk. Between 8:00 and 9:00 that evening, they went to the Solon Hotel where they continued to imbibe for an additional two hours.

Olon Burns testified that he met the victim, James Mayo, at the Solon Hotel that same evening. Before the two entered the bar, Mayo had to urinate and did so near the rear of Leet's parked van. Burns testified that he heard someone yell "Quit pissing on my van," and three men jumped out of the van and began beating Mayo. Leet admitted that he punched Mayo three times in the face, twice knocking him down. After the second time Mayo went down, McManus and Wright began kicking and jumping on him. Thereafter, the three men left the hotel. As they drove away in Leet's van, Leet heard McManus and Wright fighting over money taken from Mayo. While en route to Madison, Leet stopped the van to allow McManus and Wright to throw Mayo's wallet and watch out the window.

Maine State Police Trooper Vicki Gardner was the first to respond to the scene and found Mayo with "severe facial injuries" and very bloody. Mayo recounted to her that his wallet, lighter and watch were missing. Later that evening, the police arrested Leet and Wright. Leet later entered a plea of guilty to charges of robbery, assault, and failure to appear in court. He served to completion a five year jail sentence.

Wright was indicted on counts of robbery and aggravated assault. He entered a not guilty plea and was released on bail. Thereafter, he was indicted on charges arising out of a separate incident of criminal threatening with a dangerous weapon, robbery, assault, aggravated assault, driving with a suspended license, and violation of probation. When Wright failed to appear in court on September 16, 1987, a warrant was issued for his arrest. He was ultimately apprehended in October 1993 in Washington state where he waived extradition and was returned to Maine. After a jury trial, Wright was convicted of both robbery and assault. He appeals from the judgments entered on those convictions.

## I. *Newspaper Article*

■ First, Wright complains that the jury was prejudicially tainted by its exposure to a newspaper article that ran on a local newspaper's front page the first day of his trial. The article disclosed Wright's prior criminal

---

**1. Robbery**
 **1.** *A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:*
 **A.** *He recklessly inflicts bodily injury on another;*

 . . . . .

 **D.** *He intentionally inflicts or attempts to inflict bodily injury on another; or*
 **E.** *He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery....*

17–A M.R.S.A. § 651.

**2.** Wright was arrested for aggravated assault, 17–A M.R.S.A. § 208 (1983), which was later reduced to a charge of simple assault, 17–A M.R.S.A. § 207.

**3.** The statute provides: "A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." 17–A M.R.S.A. § 207(1).

record, his ethnicity, and his previous fugitive status.

 To be valid, a verdict in a criminal case must be the product of honest deliberations, absolutely free from juror prejudice or bias. *State v. Royal,* 590 A.2d 523, 524 (Me. 1990). When a jury's impartiality is questioned, the trial court should individually interview the jurors to ascertain whether each can remain impartial. *State v. Gilman,* 637 A.2d 1180, 1182 (Me.1994). The court's determination of whether a juror can remain impartial is entitled to substantial deference because of the trial court's ability to observe and to assess the juror's credibility. *Gilman,* 637 A.2d at 1182. We review a decision whether to grant a motion for a mistrial only for an abuse of discretion. *Id.*

Here, because the court recognized the potential prejudice to the trial process caused by the article's disclosure of several specific facts about Wright's history, the court questioned the jurors to determine if any had read the article. Our review of the court's inquiry of the one juror who admitted to seeing the article satisfies us that the court did not err in its factual determination that although the juror may have seen the article, it did not influence him in any way because he neither read the article nor could he recite its contents. The trial court therefore did not abuse its discretion when it declined to dismiss and replace the juror.

## II. *Prior Convictions*

 Second, Wright contends that the court erred in finding that the probative value of his prior convictions outweighed the prejudicial effect of that evidence. We review the trial court's admission of a prior conviction for impeachment to determine whether the court applied the correct legal standard or whether the court abused its discretion. *State v. Mazerolle,* 614 A.2d 68, 73–74 (Me.1992); *State v. Hanscome,* 459 A.2d 569, 572 (Me.1983).

 Wright does not dispute that the court properly determined that Wright's prior crimes of theft and burglary properly fall within the parameters of Rule 609(a). *See* M.R.Evid. 609(a) (rule applies to convictions for crimes punishable by more than one year or crimes involving dishonesty or false statement regardless of the punishment rendered). The rule, however, explicitly requires that the court make a threshold determination of whether "the probative value of this evidence upon witness credibility outweighs any unfair prejudice to a criminal defendant. . . ." M.R.Evid. 609(a); *State v. Brown,* 479 A.2d 1317, 1319 (Me.1984). The similarity of the prior conviction of the crime charged substantially increases the potential for misuse of the evidence by the jury. *See* Field & Murray, *Maine Evidence,* § 609.1 (3d ed. 1994) (similarity of offense enhances the prejudicial impact because of the likely inference of predisposition or recidivism).

The record indicates that the court properly balanced the prejudicial risks to Wright against the value of allowing the admission of such evidence of his prior convictions for burglary and theft. The court found that the crimes sought to be used to impeach Wright bore a relationship to his honesty and credibility. Specifically, the court found that the prior convictions were neither crimes of violence nor substantially similar to the crimes pending. On this record, we cannot say that the trial court acted beyond its discretion in allowing the State to impeach Wright's credibility pursuant to Rule 609.

## III. *Flight Evidence*

 Third, Wright asserts that it was erroneous for the trial court to allow the introduction of evidence of his flight from Maine because the court failed to determine whether the evidence was relevant and, if so, whether that relevance outweighed its prejudicial effect. We have previously held that when viewed with other incriminating evidence, evidence of flight to avoid accusation or arrest may demonstrate consciousness of guilt. *State v. Osborne,* 622 A.2d 1173, 1174 (Me.1993). Whether evidence of Wright's flight from the state after his arrest and knowledge of his scheduled court appearance is admissible required the trial court to balance the probative value of his flight against the danger of unfair prejudice. *State v. Rouselle,* 559 A.2d 779, 780 (Me.1989). *See* M.R.Evid. 403. Therefore, we review the

trial court's decision of whether to admit or exclude that evidence only for an abuse of discretion. *State v. Googins*, 640 A.2d 1060, 1062 (Me.1994).

The trial court's decision to preclude use of the word "extradition" and to limit evidence of the extradition to its most basic facts balances the importance of preventing the jury from speculating about the reason for the seven year delay in bringing the case to trial against the backdrop of prejudice likely to develop if too much emphasis and a negative connotation were attached to Wright's removal from Washington. The court's ruling on the limited use of Wright's flight was not an abuse of its broad discretion. *See Rouselle*, 559 A.2d at 780 (when court could have concluded probative value of defendant's failure to appear was not outweighed by any danger of unfair prejudice, admission of flight evidence was not an abuse of discretion).

■■■■■ Further, Wright complains that the court should have given a limiting instruction after allowing evidence of his flight. Because Wright did not request the court to give an instruction on flight evidence, we are limited to a review for obvious error. *Harris v. PT Petro Corp.*, 650 A.2d 1346, 1349 (Me. 1994); *Googins*, 640 A.2d at 1062; M.R.Crim.P. 52(b). We find no error, much less obvious error, in the court's instructions as a whole. The evidence of flight introduced was limited to its occurrence and the circumstances involving Wright's return to Maine for trial. The court's instructions "inform[ed] the jury correctly and fairly in all necessary respects of the governing law." *Googins*, 640 A.2d at 1062–63 (*quoting Phillips v. Eastern Maine Medical Ctr.*, 565 A.2d 306, 308 (Me.1989)).

### IV. *Accomplice Testimony Instruction*

■■■■■ Wright next argues that because witness credibility was the determinative issue, the denial of his request for an accomplice testimony instruction was erroneous. We review the trial court's ruling for prejudicial error and discover none. *State v. Palmer*, 474 A.2d 494, 495 (Me.1984); *Mazerolle*, 614 A.2d at 74. The general credibility instruction accurately put the jury on notice to

consider the motivations of the various witnesses to determine the accuracy of the various conflicting statements.

### V. *Accomplice Liability Instruction*

■■■■■ Finally, Wright complains that there was no basis for the court to instruct the jury on accomplice liability. To generate the instruction, the evidence of a second person's involvement need raise only the possibility that a juror will entertain a reasonable doubt as to whether the defendant committed the crime. *State v. Caouette*, 462 A.2d 1171, 1175 (Me.1983). Because the evidence established that Wright was, at a minimum, present and aided in the robbery, the trial court properly instructed the jury on accomplice liability. *Id.*

The entry is:

Judgments affirmed.

All concurring.