2000 ME 145

**STATE of Maine**

v.

**Michael GRAY.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 27, 2000.

Decided July 25, 2000.

Michael P. Cantara, District Attorney, Jeffrey H. Moskowitz, Asst. Dist. Atty., Alfred, for State.

Clifford B. Strike, Esq., Strike & Gordon, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Michael Gray appeals from judgments of conviction entered in the Superior Court (York County, *Levy, J.*), following a jury trial, on counts of robbery (Class A), *see* 17–A M.R.S.A. § 651 (1983), burglary (Class B), *see* 17–A M.R.S.A. § 401 (1983 & Supp.1999), burglary of a motor vehicle (Class C), *see* 17–A M.R.S.A. § 405 (Supp. 1999), and eluding a police officer (Class C), *see* 29–A M.R.S.A. § 2414(3) (1996), and on two counts each of theft by unauthorized use of property (Class D), *see* 17–A M.R.S.A. § 360 (1983 & Supp.1999), and theft by unauthorized taking or transfer (Class E), *see* 17–A M.R.S.A. § 353 (1983).[1]

---

1. Gray was sentenced to 16 years, all but 12 suspended, for robbery; 6 years, all but 3 suspended, for burglary; 3 years, all but 2 suspended, for each of one count of burglary of a motor vehicle and for one count of eluding police; 6 months for each of two counts

Gray contends that the court erred or acted beyond its discretion when it denied in part his motion in limine to exclude evidence of his prior criminal history. Gray also argues that the evidence is insufficient to support the jury's verdict. Although we conclude that there is no error or abuse of discretion in the court's denial of Gray's motion in limine, we agree with Gray that the evidence is insufficient to support convictions on three of the counts on which judgments were entered. Accordingly, we vacate the judgments on those counts, affirm the judgments on the remaining counts, and remand for resentencing.

[¶ 2] Viewing, as we must, the evidence in a light most favorable to the State, *see State v. Emerson,* 675 A.2d 978, 979 (Me. 1996), the jury could reasonably have found the following events to have occurred: Early on the morning of November 10, 1998, in Biddeford, Dee Dean awakened and discovered that a "tall, thin man, with his face all covered ... [holding] a flashlight in one hand and a hunting knife in the other hand," and wearing black gloves, had entered her West Street home in Biddeford. The man told her to return to her bedroom, where he taped her hands behind her back and taped her feet together. It seemed to Dean that at some point the man removed his gloves in order to finish taping her hands. Dean asked the man why he was doing this, to which he replied, "I'm desperate." The man asked Dean for the personal identification number (PIN) for her credit card, but Dean did not have a PIN. He then left the room, and shortly Dean saw lights in her driveway and heard a vehicle drive off. Dean was able to free herself, and called the police.

[¶ 3] Biddeford Police Officer Steven Gorton was dispatched to Dean's house.

While heading toward the home, Gorton observed a vehicle on West Street east of Guinea Road heading toward him, and away from the Dean home, with a missing front license plate.[2] Gorton continued on to the house after ordering Officer Matthew Baldwin, who was driving another cruiser immediately behind Gorton, to stop the vehicle and identify its driver.

[¶ 4] After Gorton arrived at the Dean residence, he and Dean found dirt footprints in the house, with more footprint impressions on the carpeting upstairs. It appeared that someone had gone through Dean's purse. A number of items were missing, including $70 to $90 dollars in cash, a new, unsigned credit card, and the keys to Dean's truck and house. The truck was gone. The back door to the house was open, and the spare key was found in the location where Dean hid it, beneath a deck on the rear side of the house.

[¶ 5] Meanwhile, as ordered by Gorton, Officer Baldwin turned on his blue lights and attempted to stop the vehicle the officers had encountered. The vehicle started to pull over, but soon pulled back onto the road and sped off. Baldwin was not certified for high speed chase, and thus followed the vehicle as best he could at the posted speed limit. He called his dispatcher and reported the license number and that the vehicle was a dark colored sedan. The license number led police to contact Justin Harvey, a co-worker of Gray's and the registered owner of the vehicle, who informed the police that Gray was in possession of his vehicle. Baldwin followed the vehicle down Guinea Road, and continued as the vehicle turned right onto Meetinghouse Road, and finally right onto Pool Road (Route 9), before Baldwin lost sight of it. Baldwin picked up the trail not far

---

of unauthorized use of property; and 3 months for each of two counts of theft by unauthorized taking or transfer. *All sentences were to be served concurrently.* Gray also received 6 years probation for the robbery conviction and 4 years probation for the

convictions for burglary, burglary of a motor vehicle, and eluding police.

2. The missing plate was ultimately located nearby, lying in the middle of the road.

away after the suspect vehicle was spotted by a security guard at the University of New England, who began pursuing the vehicle as well. The security guard identified the car as a Plymouth Sundance. Eventually, a Kennebunkport police cruiser driven by Officer Steven Shisler began pursuing the vehicle, and Baldwin and the security guard gave up the chase.

[¶ 6] Shisler turned on his blue lights and followed the vehicle south along Route 9. The Sundance eventually turned off Route 9 onto Fortunes Rocks Road just north of the Kennebunkport line, then turned right onto Ocean Spray Avenue, and finally came to a halt in a residential driveway. Shisler blocked the driveway with his cruiser, got out, and drew his weapon. The vehicle, however, backed up and turned parallel to the cruiser; i.e., across the driveway. Shisler saw that there was only one occupant, the driver, whom he described as a white male approximately six feet tall, balding, in his early–30s, and wearing a New England Patriots jacket. (Later, however, from a photo lineup, Shisler picked a person who was not the defendant as the driver.) The driver steered the vehicle across the lawn and onto the road, and escaped. Although Shisler attempted to pursue the vehicle, he never saw it again that morning.

[¶ 7] Meanwhile, on Pool Road, approximately one-and-a-half miles away from where the Sundance had escaped from Shisler, Theresa Camire reported that her white Honda Accord had been stolen at some point between 6 P.M. on November 9 and 6:30 A.M. on November 10. She had left her keys in the car's ashtray and the doors unlocked. She testified that she observed footprints across her front lawn in the morning dew leading to where her car had been parked.

[¶ 8] The evidence also revealed that Dean had hired Sealex, Inc., a Portland company, to seal the foundation of her home in Biddeford. Sealex began work on the Dean home on November 9, 1998.

Gray and Harvey were both members of the work crew dispatched to the house.

[¶ 9] In the back of Dean's house is a deck, adjacent to the back door. Dean hid a spare key under the deck for use in emergencies. Although not visible from above, someone underneath the deck could see the key. Gray and Harvey had been assigned to dig below the deck in order to prepare the foundation for sealing.

[¶ 10] Harvey was in the process of selling his Plymouth Sundance to Gray, and allowed Gray to have possession of it as Gray paid him off. The morning of November 9, Harvey told Gray that he had to pay the balance by the following day or Harvey would take back the car, keeping the money paid thus far.

[¶ 11] On the day before the robbery, Gray had been wearing a Patriots jacket with dark pants and white sneakers. Harvey had recently given Gray a large hunting knife. Another worker testified that he had set aside his blue winter gloves, which had been converted into work gloves, during work that day, but had been unable to find them later. At trial, Harvey recalled that Gray had asked him where Gray could find some duct tape. Harvey also testified that Sealex uses both duct tape and clear packing tape.

[¶ 12] On cross-examination, Dean testified that several of the Sealex workers had entered by the back door and walked through portions of the house (with, presumably, muddy boots) after inadvertently cutting a septic pipe while preparing the foundation.

[¶ 13] The clear packing tape used to bind Dean's hands was taken as evidence, and appeared to have sealing compound on it. Dean's truck was ultimately found and returned to Dean, but a camera she had kept in the vehicle was missing. Footprints found near where the truck was recovered were similar to those found at the Dean residence.

[¶ 14] The Sundance was found abandoned on Elizabeth Road in Biddeford

about a mile-and-a-half from Camire's residence. Inside the Sundance, a pair of white sneakers were found with sealing compound on them.

[¶ 15] Within days after the Honda had been stolen, an employee of Cedars Nursing Care in East Deering, Portland, noted the presence of Camire's vehicle in the Cedars parking lot, but the police were not notified until the car had remained in the lot for nearly three weeks. Cedars is approximately 26 miles from Camire's residence. According to Camire, she had re-zeroed the trip odometer after filling up the gas tank just before arriving home on the 9th. When the car was returned to her, it appeared that it had been driven 81 or 82 miles. In addition, the driver's seat had been pushed all the way back. Camire's purse, containing $20 and other items, was gone, but a canvas bag and $200 that she had kept in an envelope in the glove compartment remained. A sample of some sort of residue was taken from the steering wheel of Camire's vehicle, but it was not consistent with the sealing compound used by Sealex.

[¶ 16] In the morning following the robbery, Gray was arrested by a Portland Police officer at Sealex's headquarters in the East Deering section of Portland. Harvey had arrived at Sealex early that morning to discover that the shop was unlocked. Harvey and another co-worker then found Gray asleep in a truck, and called the owner and then the police. Gray was still asleep when the officer arrived. Gray was wearing work boots that belonged to the general manager of Sealex and that had been left at the business. The boots were seized as evidence. Gray had $16 in cash on his person. Another $88 was found several months later hidden under a five gallon jug of pumice that workers used to clean their hands.

[¶ 17] Several days after Gray's arrest, in the Sealex truck in which Gray had been found asleep, Harvey discovered a shirt and pair of hiking boots belonging to Gray, along with a "spray sock"—essentially a face mask to be worn to prevent the inhalation of sprays such as sealants and paint. The boots seemed to have sealant residue and dirt or clay on them. The boots were also consistent with footprint casts taken at the Dean residence and at the location at which Dean's truck was found.

[¶ 18] Gray was charged with burglary (Count I) and robbery (Count II) for the events in the Dean home, and with unauthorized use of property (Count III), burglary of a motor vehicle (Count IV), and theft by unauthorized taking or transfer (Count V) for taking Dean's truck and removing the camera. Gray was also charged with unauthorized use of property (Count VI), burglary of a motor vehicle (Count VII), and theft by unauthorized taking or transfer (Count VIII) for taking Camire's vehicle and the purse in the vehicle. He was additionally charged with eluding a police officer during the chase (Count IX). Gray pled not guilty to all charges.

[¶ 19] Prior to his convictions in this case, Gray had a substantial criminal history, which included convictions for Class B thefts in 1990 and 1991, Class E thefts in 1987 and 1991, Class B burglary in 1991, and Class C possessions of a firearm by a felon in 1990 and 1991. He had also been convicted on nine counts of Class D forgery and five counts of Class D unsworn falsifications in 1990, along with three counts of Class E negotiating a worthless instrument in two separate cases in 1991. Before trial, Gray moved in limine to prevent any evidence of this history from being introduced to impeach his credibility should he choose to testify. The record does not reveal that the court considered the motion before the trial; according to Gray, however, the court granted the motion in part, excluding the use of the theft, burglary, and possession of a firearm by a felon convictions, and reserved ruling on the use by the State of the convictions for forgery and unsworn falsification.

[¶ 20] During the trial, after the State had presented all but two witnesses in its case in chief, the court addressed the remainder of the motion, ruling that the convictions for forgery and unsworn falsification could be used by the State to impeach the defendant if he testified. The State then presented the remainder of its case and rested. Gray moved for a judgment of acquittal, which was denied as to all charges. Gray then rested without testifying or producing any other evidence.

[¶ 21] The jury returned a guilty verdict as to all charges except for burglary of Dean's truck (Count IV), on which they found Gray not guilty. Gray filed a motion for a new trial, contending that the evidence was insufficient to support the verdict, but the motion was denied without comment by the court. Gray then filed this appeal.

### I.

[¶ 22] Gray contends that the court did not apply the proper balancing test when, pursuant to M.R. Evid. 609, it determined that the prior convictions for forgery and unsworn falsification could be used to impeach Gray if he testified. In essence, Gray asserts that the court abused its discretion by indicating that it would allow the use of the convictions by the State to impeach Gray even though it results in some prejudice to Gray's defense. In addition, Gray claims that the cumulative effect of all fourteen prior convictions was unfairly prejudicial. We disagree.

[¶ 23] It is settled law that, in order to preserve on appeal an issue regarding the denial of a motion in limine to exclude the use of prior convictions to impeach the defendant in a criminal trial, the defendant must testify. *See Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *State v. Huntley*, 681 A.2d 10, 13 (Me.1996) (holding that, when defendant has not testified, we review the denial of the motion "only for

obvious error affecting substantial rights and will vacate the judgments of convictions 'only if the conviction[s] [were] produced by a fundamentally unfair trial'") (quoting *State v. Dunn*, 480 A.2d 788, 790 (Me.1984)). Gray chose not to testify at his trial, and has, therefore, failed to preserve this issue on appeal. Accordingly, our review of the denial of his motion in limine is for obvious error affecting substantial rights.

Rule 609 of the Maine Rules of Evidence provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a specific crime is admissible but only if the crime (1) was punishable by death or imprisonment for one year or more under the law under which the witness was convicted, or (2) involved dishonesty or false statement, regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence upon witness credibility outweighs any unfair prejudice to a criminal defendant or to any civil party.

M.R. Evid. 609(a). When the issue is preserved, we review a trial court's determination that prior convictions are admissible for an abuse of discretion. *See State v. Wright*, 662 A.2d 198, 201 (Me.1995).

[¶ 24] The crimes that the court allowed were nine convictions for forgery and five convictions for unsworn falsification—all clearly involving "dishonesty or false statements." These prior convictions, as the court found in denying the motion in limine, were probative as to the defendant's credibility, and were not so similar to the charges in the instant case as to be unfairly prejudicial. *See Wright*, 662 A.2d at 201. Thus, even had the issue been preserved, the court acted within its discretion when it allowed the use of prior convictions to impeach Gray.

## II.

[¶ 25] Gray contends that there was insufficient evidence for a jury to reasonably conclude that he was guilty of any of the crimes charged. When reviewing the sufficiency of the evidence in a criminal case, we review the evidence in a light most favorable to the State to determine whether the evidence establishes, beyond a reasonable doubt, every element of the offenses charged. *See State v. Emerson,* 675 A.2d 978, 979 (Me.1996).

[¶ 26] Here, Gray had worked at Dean's house under the deck, where the spare key was hidden. The money found on Gray and under the bucket of pumice at Sealex is roughly equal to the amount Dean claims was stolen. The footprints found by the police match Gray's boots that were found by Harvey, and connect Gray to the inside of the Dean home and to the location where her truck was found. These facts, together with Dean's testimony, were sufficient for a jury to find Gray guilty of burglary of the Dean home, robbery, and the crimes related to the use of Dean's truck. Additionally, Harvey's testimony that Gray was in possession of Harvey's Sundance, Officer Baldwin's observation of the license plate number, and Officer Shisler's description of the driver he observed driving the Sundance sufficiently supported the conviction for eluding a police officer.

[¶ 27] The evidence connecting Gray with the theft of Camire's Honda, however, is considerably less substantial. That evidence is that (1) the Honda was stolen about 1.5 miles from the location in which the Sundance was ultimately found, and (2) the Honda was found approximately one mile from Sealex, where Gray was arrested. The State was unable to establish the presence of sealing compound in Camire's Honda similar to that found in the Sundance and in Dean's home. Nor was the State able to present evidence regarding the date and time when the Honda was abandoned in the parking lot.

Although a factfinder may draw reasonable inferences from circumstantial evidence, *see State v. Marden,* 673 A.2d 1304, 1312 (Me.1996), the evidence in this case is insufficient for a jury to rationally conclude beyond a reasonable doubt that Gray had taken Camire's vehicle and stolen her purse, *see, e.g., State v. Ketchum,* 1997 ME 93, ¶¶ 10–11, 694 A.2d 916, 918 (vacating conviction of the defendant as accomplice to theft where the only evidence was that the defendant had rode, with the principal, in a car where a portion of the stolen items were found); *State v. Carter,* 391 A.2d 344, 347 (Me.1978) (vacating conviction of co-defendant as accomplice to robbery when evidence included no description of accomplice, but established co-defendant was a passenger in the principal's vehicle, which was found to contain instrumentalities of the crime, and where co-defendant "was seen bending over as if putting something under the car seat where the gun was found"). Accordingly, we vacate the convictions for burglary and unauthorized use of Camire's vehicle and for the theft of her purse. We affirm on all the other charges of which the jury found Gray guilty.

The entry is:

Judgments as to Counts VI, VII, and VIII vacated. Remanded to the Superior Court for entry of judgments of acquittal as to Counts VI, VII, and VIII, and for resentencing on Counts I, II, III, V, and IX, judgments of conviction for which are affirmed.