MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 162
Docket:      Pen-18-2
Argued:      September 12, 2018
Decided:     December 11, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ROBERT BURTON

HJELM, J.

[¶1]  In the early hours of June 5, 2015, Robert Burton entered the home of his former girlfriend and shot her three times in the back, killing her.  He fled into the woods and evaded law enforcement officials for sixty-eight days before turning himself in.  Burton was charged with, and found guilty of, intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2017), and possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1) (2017).   Burton appeals from the resulting judgment of conviction (Penobscot County, *Mullen, J.*), presenting two arguments.  He first asserts that the court erred by rejecting six questions that he sought to have included in the written jury selection questionnaire and by not giving the prospective jurors the option of answering any of the questions with "not sure" as an alternative to "yes" or "no."

Second, Burton contends that the court erred by admitting evidence of two prior burglary convictions to impeach his trial testimony. *See* M.R. Evid. 609. Finding no error, we affirm the judgment.

## I.  BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt." *State v. Fortune*, 2011 ME 125, ¶ 3, 34 A.3d 1115.

[¶3]  Burton and the victim began a romantic relationship in the spring of 2013.  Shortly thereafter, Burton moved into the victim's home in Parkman, where they lived together with her two children.  By May of 2015, Burton was acting increasingly suspicious of the victim's activities.  After a confrontation on May 30, the victim ended their relationship and directed Burton to move out of her home.

[¶4]  Burton then began living in his truck in the woods.  On June 5, 2015, shortly after midnight, Burton left his truck parked on a tote road and walked to the victim's house.  Armed with a knife and wearing a shirt to which he had affixed strips of duct tape, Burton entered the victim's house through a bedroom window.  A struggle between Burton and the victim ensued, and Burton fatally shot the victim three times in the back with the victim's own

handgun. Burton, who sustained a minor gunshot wound during the altercation, fled into the woods. Despite an intensive search by law enforcement officers, it was two months before he was arrested, after emerging from the woods clean-shaven and with his gunshot wound nearly fully healed and turning himself in to the Piscataquis County Jail.

[¶5] Three days after the homicide, while Burton was still at large, he was charged by complaint with one count of intentional or knowing murder. *See* 17-A M.R.S. § 201(1)(A). That October, the Piscataquis County grand jury indicted Burton for that charge and one count of possession of a firearm by a prohibited person. *See* 15 M.R.S. § 393(1)(A-1). Burton pleaded not guilty to each charge. The court later granted Burton's motion to change venue, and the case was transferred to the Unified Criminal Docket in Penobscot County. As part of the pretrial proceedings, Burton moved in limine for the court to exclude evidence of his prior criminal convictions for impeachment purposes, *see* M.R. Evid. 609, and the parties agreed to defer the issue to the time of trial.

[¶6] The trial was held in late September and early October of 2017. Burton elected to have the court adjudicate the firearms charge and proceeded with a jury trial on the murder charge.

[¶7] Jury selection encompassed two days. Burton submitted a list of twenty-one voir dire questions that he requested the court include in a written questionnaire that was to be distributed to the members of the jury pool. Each of Burton's proposed questions was followed by three possible answer choices: "yes," "no," and "not sure." Over Burton's objection, the court declined to include "not sure" as an answer and also declined to include the following six questions proposed by Burton that are at issue on this appeal:

> 3. Do you believe that because a police officer has arrested someone for murder it means the person arrested is likely guilty? . . .
>
> 5. Do you feel or believe Mr. Burton looks like he may be guilty of the charge of murder? . . .
>
> 10. Would you have any difficulty in finding Mr. Burton not guilty if you had a reasonable doubt that he was guilty?
>
> 11. If you have a reasonable doubt as to Mr. Burton's guilt, but think he may have probably committed a crime, would you be able to follow the law and find him not guilty?
>
> 12. Do you believe that too many defendants that stand trial in criminal cases are found not guilty? . . .
>
> 21. The law allows a person to use deadly force against another person in self-defense. Do you have any beliefs or opinions that would prevent you from applying the law of self-defense if the Court provided such an instruction in this case?

[¶8]  The written questionnaire distributed to members of the jury pool explained the presumption of innocence, the State's burden to prove the charge beyond a reasonable doubt, and the legal recognition of the justification of self-defense.  Additionally, the questionnaire asked the potential jurors to state whether they would be able to apply the law as explained by the court despite any personal disagreements with the law.  After the court and the parties reviewed the answers to the written questions, the court conducted individual voir dire of a number of potential jurors regarding their answers.  During that process, the court permitted both Burton and the State to ask questions of those potential jurors.  None of the jurors who were eventually seated was challenged for cause by either party.

[¶9]  The jury was impaneled, and the court proceeded to hold an eight-day trial.  After the State rested its case-in-chief, and with the parties' anticipation that Burton would testify, the court heard argument from the parties on the admissibility of evidence of Burton's prior criminal convictions to impeach his testimony.  *See* M.R. Evid. 609.  The State identified ten prior convictions, all entered against Burton in 2003, that satisfied the criteria for admissibility prescribed in Maine Rule of Evidence 609: possession of a firearm by a prohibited person; criminal threatening with a dangerous weapon; four

6

burglaries; and four thefts, three of which were punishable by at least one year in prison and the fourth by less than one year of incarceration. Of the ten convictions, the State agreed not to seek the admission of evidence of the convictions for possession of a firearm by a prohibited person and the lesser theft. Beyond that, the court excluded evidence of the conviction for criminal threatening with a dangerous weapon, finding that it was too similar to the crime charged and not sufficiently probative of Burton's credibility as a witness. Over Burton's objection, the court ruled that, if he were to testify, it would admit evidence of convictions for two burglaries and two thefts.

[¶10] In conjunction with its ruling to admit evidence of those four convictions, the court offered to give the jury a limiting instruction—that evidence of Burton's prior convictions could be considered only in assessing the credibility of his testimony—when the evidence was presented or as part of its final instructions to the jury. Burton requested the latter.

[¶11] Burton testified the next day, and on direct examination defense counsel elicited evidence of the four prior convictions that the court allowed. During its lengthy cross-examination of Burton, the State did not inquire into his convictions, nor did it directly address that evidence in its closing argument.

[¶12]  The jury found Burton guilty of murder, and the court found him guilty of the firearms charge.  After a sentencing hearing held in December of 2017, the court imposed a fifty-five-year prison sentence on the murder charge and a concurrent four-year sentence on the firearms violation.  Burton filed a timely appeal from the judgment.  *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶13]  Burton challenges the trial court's decision not to include in the juror voir dire questionnaire six of his proposed juror questions and, in addition to the "yes" and "no" answer choices on the written questionnaire, a third option of "not sure."  He also challenges the admission of evidence of the two burglary convictions for purposes of impeachment.  *See* M.R. Evid. 609.  We discuss these arguments in turn.

A.    Juror Voir Dire

[¶14]  Burton does not challenge the inclusion of any particular juror on the jury panel but rather asserts that the court erred in the way it conducted voir dire.  Challenges to the way a court conducts voir dire are reviewed for an abuse of discretion. *State v. Roby*, 2017 ME 207, ¶ 11, 171 A.3d 1157.

[¶15] We have held that "the purpose of the voir dire process 'is to detect bias and prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible.'" *Id.* (quoting *State v. Lowry*, 2003 ME 38, ¶ 7, 819 A.2d 331). In conducting voir dire, the court is also responsible for "balancing the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors." *Id.* ¶ 12 (quotation marks omitted). Accordingly, so long as the voir dire process is "sufficient to disclose facts that would reveal juror bias," *id.* ¶ 13 (quotation marks omitted), the court has "[c]onsiderable discretion over the conduct and scope of juror voir dire," *id.* ¶ 12 (alteration in original) (quotation marks omitted).

[¶16] We first address Burton's assertion that the court erred by declining to include six of Burton's twenty-one proposed questions in the juror questionnaire.[1] Burton argues that the questions were carefully designed to detect juror bias because they invoked details of a case of which he has superior knowledge and that, by declining to include those questions, the court "prohibited him from fully exploring areas of bias and prejudice with the jurors

---

[1] The court also declined to use several other voir dire questions proposed by Burton, but Burton limits his appellate assertion of error to the six questions described above. *See supra* ¶ 7.

that heard his case and ultimately convicted him." *See State v. Lovely*, 451 A.2d 900, 902 (Me. 1982).

[¶17] In making its determination regarding the content of the jury questionnaire, the court consulted extensively with both Burton and the State. The record confirms that, in this way, Burton had full opportunity to explain the reasons for presenting the proposed questions to the jury pool. *See id.* at 901-02 (vacating a judgment where the court rejected defendant's voir dire question without inquiring about the reason for which it was requested). Further, the concepts underlying the questions at issue are not obscure or subtle. Rather, they relate to the presumption of innocence, the State's burden to prove guilt beyond a reasonable doubt, and the principle of self-defense.[2] The questionnaire used by the court—which included other questions proposed by Burton—contained explanations of these concepts that were sufficient to reveal any juror bias. *See Roby*, 2017 ME 207, ¶ 13, 171 A.3d 1157; *Lowry*, 2003 ME 38, ¶ 11, 819 A.2d 331. When the court rejected the six specific

---

[2] We note in particular that the written questionnaire used by the court addressed the principle of self-defense in verbiage that was almost identical to Burton's proposed question, *see supra* ¶ 8, but that stated the law more accurately: "The law allows *in certain circumstances* a person to use deadly force against another person in self-defense or in defense of premises. Do you have any beliefs or opinions that would prevent you from applying the law of self-defense or defense of premises if the Court provided such an instruction in this case?" (emphasis added). *See State v. Roby*, 2017 ME 207, ¶ 14, 171 A.3d 1157 (stating that the court did not err by declining to use proposed voir dire questions that did not correctly state the law).

queries that were already adequately covered by the questions posed to the members of the jury pool, the court acted well within the discretion it has "to appropriately craft questions probing for juror bias." *State v. Collin*, 1999 ME 187, ¶ 7, 741 A.2d 1074.

[¶18] Similarly, the court acted within its discretion by not including Burton's proposed third answer choice, "not sure," in the juror questionnaire. We recently held that the trial court did not abuse its discretion by declining to present the prospective jurors with four possible answer choices—"strongly agree," "agree," "disagree," and "strongly disagree." *Roby*, 2017 ME 207, ¶¶ 3-4, 13, 171 A.3d 1157 (concluding that the court is "not required to[ ]'voir dire the jury in the exact manner requested'" by the defendant so long as the questions and methods used by the court are sufficient to uncover juror bias. (quoting *Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074)). Here, the court reasonably concluded that the options of "yes" and "no" on the questionnaire were sufficient to reveal juror bias. *See id.* ¶ 13.

[¶19] Moreover, the court permitted the parties to follow up with individual voir dire of jurors whose answers to the questionnaire triggered a need for further inquiry, thereby providing an additional opportunity to uncover potential juror bias and prejudice that may have been suggested by

their answers. *See Lowry*, 2003 ME 38, ¶¶ 4, 10, 819 A.2d 331 (vacating a judgment where potential jury members indicated during voir dire some experience with violent crimes or the criminal justice system, but were not excused or questioned individually in camera to determine the nature of the experiences). The court's exclusion of "not sure" as a possible response was not an abuse of its discretion.

B.     Admission of Burton's Prior Convictions

[¶20]  Burton next contends that although the court correctly excluded evidence of six prior convictions—two by agreement of the State but four others that the State sought to admit[3]—the court erred by admitting evidence of convictions for two burglaries.[4]  "[W]e review a trial court's determination that prior convictions are admissible for an abuse of discretion."[5] *State v. Gray*, 2000 ME 145, ¶ 23, 755 A.2d 540.

---

[3] The court excluded evidence of Burton's convictions for criminal threatening with a dangerous weapon, possession of a firearm by a prohibited person, two thefts, and two burglaries. *See supra* ¶ 9.

[4] The court also admitted evidence of two theft convictions. Burton does not challenge that ruling on appeal. *See supra* ¶ 9.

[5] Burton's trial counsel meticulously preserved this issue for appeal. Burton challenged the admissibility of evidence of prior convictions in a way that put the State and the court on notice of the issue. Then, after the parties presented their arguments and the court ruled that some conviction evidence would be admitted, Burton made clear that, as a strategic matter, he himself would elicit that evidence during direct examination but that, by doing so, he was not acquiescing in the court's ruling or otherwise waiving the issue for appellate review. The court accepted this approach, and the State explicitly acknowledged on the record that it regarded the issue as preserved.

12

[¶21] Rule 609(a) of the Maine Rules of Evidence authorizes the court to admit evidence of a witness's prior conviction "[f]or a crime that . . . was punishable by death or by imprisonment for more than one year; or . . . [f]or any crime if the court can reasonably determine that establishing the elements of the crime required proving—or the witness admitting—a dishonest act or false statement." Further, evidence of a prior conviction may be admitted only if "[l]ess than 15 years has passed since the conviction; or . . . [l]ess than 10 years has passed since the witness was released from confinement for the conviction." M.R. Evid. 609(b).

[¶22] Even if evidence of a prior conviction satisfies these criteria, the court must then engage in a discretionary analysis to determine whether "its probative value outweighs its prejudicial effect on a criminal defendant . . . ." M.R. Evid. 609(a). We have stated that a proper Rule 609 analysis accounts for factors such as the recency or remoteness of the prior conviction, the gravity of the offense, and whether—and to what extent—the nature of the prior conviction is suggestive of untruthfulness, *see State v. Hanscome*, 459 A.2d 569,

---

Beyond that, to preserve an appellate challenge to the admission of a defendant's prior convictions for impeachment purposes, the defendant must testify. *See State v. Gray*, 2000 ME 145, ¶ 23, 755 A.2d 540. Burton did testify, and thereby met this additional requirement for preserving the argument for appeal.

572 (Me. 1983); the cumulative effect of multiple convictions, *see id.* at 570, 572; *cf. Gray*, 2000 ME 145, ¶¶ 22, 24, 755 A.2d 540 (rejecting the defendant's argument that he was unfairly prejudiced by evidence of fourteen prior convictions, in part because that evidence was probative of his credibility); and—the factor to which Burton primarily points—the similarity between the prior conviction and the pending charge, *see State v. Braley*, 2003 ME 125, ¶ 8, 834 A.2d 140 ("When prior convictions are for the same crimes as those currently charged, there exists a serious risk that introduction of the evidence of those convictions will result in the jury treating the information as evidence of a predisposition to commit the crime charged."); *State v. Wright*, 662 A.2d 198, 201 (Me. 1995) (stating that "[t]he similarity of the prior conviction [to] the crime charged substantially increases the potential for misuse of the evidence by the jury.").

[¶23]  Burton contends that, although he was not charged with burglary in this case, the similarity between the burglary conduct for which he was previously convicted and the State's evidence of the circumstances leading to the homicide—which, he asserts, amounts to the crime of burglary[6]—required

---

[6]  "A person is guilty of burglary if . . . [t]he person enters . . . a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein."  17-A M.R.S. § 401(1)(A) (2017).

the court to exclude evidence of the prior burglary convictions pursuant to the Rule 609 balancing test. He argues that because the jury could have found that Burton burglarized the victim's residence by entering without her permission and with the intent to commit a crime inside, the jury could have improperly treated evidence of Burton's prior burglary convictions as propensity evidence—in other words, that he had a predisposition to commit the crime.

[¶24] Contrary to Burton's assertion, the court's determination that evidence of two burglary convictions was admissible pursuant to the Rule 609 balancing test was within the bounds of its discretion. The record in this case shows that the court thoughtfully and thoroughly examined the admissibility of Burton's prior convictions that otherwise qualified pursuant to Rule 609, and in fact the court excluded evidence of a number of convictions on that basis. Indeed, Burton acknowledges that the court took into account the appropriate factors that bear on a proper Rule 609 analysis and challenges only the court's ultimate determination of admissibility. The following factors demonstrate that admission of evidence of the two burglary convictions was not error.

[¶25] First, Burton was the only witness who could testify directly about the circumstances of the homicide, and so, as the court reasoned, Burton's "credibility . . . is especially important." We have stated that acts of burglary

and theft "are crimes involving dishonesty or false statement for purposes of M.R. Evid. 609." *State v. Almurshidy*, 1999 ME 97, ¶ 30 n.6, 732 A.2d 280 (quotation marks omitted); *see also Wright*, 662 A.2d at 201. *But see Linskey v. Hecker*, 753 F.2d 199, 201 (1st Cir. 1985). The court was entitled to conclude that the jury could find evidence of Burton's prior burglary convictions to be material in its assessment of his credibility as a witness.

[¶26] Second, the court explicitly considered the temporal relationship of the convictions to the time of trial, when Burton's credibility would be at issue. Burton was convicted of the crimes in 2003 but was released from incarceration on those charges in 2012, only five years before the trial. The court also accounted for the cumulative effect of multiple convictions, which can result in unfair prejudice to the defendant, and for that reason admitted evidence of only two of Burton's four burglary convictions.

[¶27] Finally, the court heard and considered Burton's concern about the similarity of the State's evidence to the prior convictions for burglary and was thereby equipped to consider that factor in its calculus. We have "clearly rejected the notion that evidence of conviction of the same or a similar crime is *per se* inadmissible under M.R. Evid. 609." *State v. Chubbuck*, 406 A.2d 282, 283 (Me. 1979). In order to ameliorate any such prejudice, in accordance with our

previous holdings, the court explicitly prohibited the parties from explaining the elements of the crime of burglary before the jury, thus avoiding any overemphasis of the evidence and the risk that the jury would improperly compare the details of the prior convictions to those of the current case. *See State v. Chase*, 490 A.2d 208, 210 (Me. 1985) (stating that "[a]lthough this threat [of prejudice] may be more obvious in situations where the prior conviction is for a crime identical or very similar to the offense presently charged, its shadow over the trial may also be evident whenever the details of the prior conviction are exposed to the jury."); *see also State v. Roy*, 385 A.2d 795, 797-98 (Me. 1978). And in a further effort to ensure that the jury considered that evidence for its proper purpose, the court appropriately gave a proper limiting instruction, which we must assume the jury heeded. *See State v. Ardolino*, 1997 ME 141, ¶ 18, 697 A.2d 73; *see also State v. Hall*, 2017 ME 210, ¶ 22, 172 A.3d 467.

[¶28] Therefore, after carefully assessing the admissibility of evidence of a significant number of convictions, the court drew on relevant considerations and in a principled way admitted evidence of several of those convictions. The admission of this impeachment evidence fell within the bounds of the court's discretion.

### III. CONCLUSION

[¶29]  The court committed no error in the way it conducted voir dire, and the admission of evidence of two burglary convictions pursuant to Rule 609(a) was not an abuse of the court's discretion.  We therefore affirm the judgment of conviction.

The entry is:

> Judgment affirmed.

_____

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Robert Burton

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot Unified Criminal Docket docket number CR-2016-1567
FOR CLERK REFERENCE ONLY