2003 ME 38

**STATE of Maine**

v.

**Malia J. LOWRY.**

Supreme Judicial Court of Maine.

Argued: Sept. 5, 2002.
Decided: March 24, 2003.

---

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Andrew Benson, Asst. Attorney General, Augusta, for State.

Jeffrey M. Silverstein, Esq. (orally), Billings & Silverstein, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Malia Lowry appeals from a judgment of conviction for manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.2002), following a jury trial in the Superior Court (Hancock County, *Marsano, J.*), contending that the trial court committed reversible error by conducting a prejudicially flawed voir dire. Because the court did exceed the bounds of its discretion during voir dire, we vacate the judgment and remand for a new trial.[1]

## I. CASE HISTORY

[¶ 2] On July 6, 2000, the police arrested Malia Lowry for the shooting death of Robert Leighton. The State charged her by criminal complaint in the Maine District Court with intentional and knowing murder pursuant to 17–A M.R.S.A. § 201(1)(A) (1983). Subsequently, the Hancock County Grand Jury indicted her for having "intentionally or knowingly caused the death of Robert Leighton, all in violation of 17–A M.R.S.A. section 201(1)(A) (1983)."

---

1. Lowry also challenges the court's refusal to instruct the jury on the defense of duress, its decision to exclude certain expert testimony, and its failure to admit certain witness testimony. Because of our disposition of the voir dire question, we do not reach these issues.

Lowry entered a plea of not guilty in the Superior Court.

[¶ 3] During voir dire of the jury, the court asked several questions of prospective jurors to determine their involvement with crimes of domestic violence, illegal use of a firearm, or the criminal justice system "as a defendant, a witness, a victim or a juror." [2] There were thirty-four affirmative answers from twenty-seven potential jurors. The court in each case asked those who had answered affirmatively whether their experience would make it difficult or impossible for them to be fair and impartial jurors. Three who said that it would—and only those three—were excused.

[¶ 4] The trial court denied Lowry's repeated requests that the court ask follow-up questions to discover the basis for the affirmative responses.[3] The court stated, "The test is not whether or not somebody's been a defendant or a victim or a witness. The test is whether or not they can be a fair and impartial person." Lowry preserved for the record her dissatisfaction with the court's refusal to conduct follow-up voir dire and with the court's subsequent denial of her challenges for cause.

[¶ 5] Lowry subsequently used all eleven of her allotted peremptory challenges, three of those to remove prospective jurors she had challenged for cause. Using its peremptory challenges, the State removed five other jurors Lowry had unsuccessfully challenged for cause. Of the prospective jurors Lowry had challenged for cause, however, two were seated on the jury.

[¶ 6] On July 2, 2001, the jury returned a verdict of not guilty to murder, but guilty to the lesser-included offense of manslaughter. The court subsequently sentenced Lowry to the Department of Corrections for a term of fifteen years, with all but eight years suspended, followed by six years of probation. This appeal followed. .

## II. DISCUSSION

[¶ 7] We review challenges to the court's conduct of voir dire for abuse of discretion. *State v. O'Hara*, 627 A.2d 1001, 1003 (Me.1993). "The purpose of the voir dire examination is to detect bias and

---

2. Among other questions, the court asked:
   Has any member of this panel themselves or a close personal friend or family member ever been accused of a crime that involved domestic violence or illegal use of a firearm or been the victim of such an allegation or criminal act?
   Nine potential jurors responded affirmatively; one of those was excused.
   Has any member of the panel or their immediate family or a close personal friend ever been the victim of a shooting?
   Three potential jurors responded affirmatively; one of those was excused.
   Has any member of the panel or close personal friend or family member ever been involved with the criminal justice system as a defendant, a witness, a victim or a juror?
   Twenty-two potential jurors responded affirmatively; one of those was excused. Of the twenty-two responding affirmatively, five had also answered affirmatively one of the two prior questions above—four to question 1 and one to question 2; an additional potential juror had answered affirmatively to both questions 1 and 2. None of those two-or-three time affirmative-answering potential jurors were excused, and none were questioned further to reveal to the court and counsel the specifics of why they had answered affirmatively.

3. One example: "Judge, I just think that is the type of specific information which the Law Court has said is necessary once you ask the question to root out some ... of the details thereunder ... for instance, I think it would be important for us as attorneys and counsel to know whether an individual were involved in the system as a defendant or juror or as a victim or a witness. It's that type of helpful information which would allow us to exercise our 'for cause' challenges and peremptories, as well."

prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible." *State v. Lovely,* 451 A.2d 900, 901 (Me.1982).

[¶ 8] Asking prospective jurors to evaluate their own ability to be impartial is not always adequate, particularly if there is significant potential for juror bias. *See, e.g., State v. Thibeault,* 390 A.2d 1095, 1099 (Me.1978). Even if prospective jurors assure the court that "nothing in their past experiences would influence or affect them in any way[,] ... such assurance of disinterest *is but one consideration* ...." *Hodgdon v. Jones,* 538 A.2d 281, 282 (Me. 1988) (emphasis added); *see also, State v. Libby,* 485 A.2d 627, 629–30 (Me.1984) ("[A] juror's claim of indifference is but one consideration ....").

[¶ 9] In *State v. O'Hara,* we vacated a conviction because prospective jurors' assurances that they could be fair even though they were familiar with law enforcement witnesses "is no substitute for knowing the precise relationship between each juror and each of the prospective witnesses." *O'Hara,* 627 A.2d at 1003. There we held:

> [T]he trial court must conduct or permit further questioning concerning the precise nature of potential jurors' relationships with those witnesses. Only after such further questioning will the court have an adequate factual basis to rule on a challenge of those jurors for cause. In effect, the court in this case permitted each juror to be the judge of his or her own qualifications.

*Id.*

[¶ 10] Here, the jurors at issue had indicated some experience with crimes of violence or the criminal justice system. The nature of that experience could significantly affect their ability to be impartial in a trial of a violent crime. Because the source of bias could have been a strong influence on a prospective juror, more detailed questioning was called for. At the very least, the court should have inquired as to whether it was the prospective juror's personal experience or that of a friend or relative—and the degree of kinship—that had triggered the affirmative answer. The court should also have inquired if the experience involved a homicide or other crime of violence. If jurors who responded affirmatively to such additional questions were not excused, the court should have questioned them individually in camera to determine the nature of the experiences that led to their affirmative answers.

[¶ 11] Questioning during voir dire must be sufficient to disclose facts that would reveal juror bias. *See State v. Stoddard,* 1997 ME 114, ¶¶ 8–9, 696 A.2d 423, 426–27. In the instant case, the decision as to whether a juror could be impartial was for the trial court, not the prospective juror, to make, and the court could not make an informed decision based on the limited information available to it.

[¶ 12] The State contends that Lowry waived her right to complain about two seated jurors whom she had challenged for cause, because she did not use two of her peremptory challenges to remove them. We disagree. Maine's court rules and statutes recognize a party's rights to both for cause and peremptory challenges.[4] 15 M.R.S.A. §§ 1258, 1259

---

4. In *State v. Albano,* 119 Me. 472, 474, 111 A. 753, 753 (1920), we held that when a court has wrongly denied challenges for cause, a party cannot complain unless the party has first used "all the means the law has provided him to obtain an impartial jury [i.e. peremptory challenges] and if it then appears that he has been prejudiced by an erroneous ruling of the trial court, [we] will grant him proper relief." Here, Lowry used all of her peremp-

(2003); M.R.Crim. P. 24(b), 24(c). For cause and peremptory challenges are different routes to the same end:

> The essence of our trial system is the guarantee of a fair trial by a disinterested jury, each member of which is free from bias and prejudice .... To ensure this constitutional right, the Maine Legislature enacted 15 M.R.S.A. § 1259, which provides for challenges for cause of any juror whose indifference a party questions.

*Libby,* 485 A.2d at 629 (citations omitted). A peremptory challenge, on the other hand, "is not aimed at the disqualification of a juror, but is employed as a means of excusing a qualified juror that one of the parties does not wish to have serve in the particular case." 3 HARRY P. GLASSMAN, MAINE PRACTICE, RULES OF CRIMINAL PROCEDURE WITH COMMENTARIES § 24.4 (1967). "The purpose of peremptory challenges is to give the parties the option, within limits, of striking from the jury prospective jurors whom the parties consider to be potentially hostile or unsympathetic to their cause." 1 DAVID P. CLUCHEY & MICHAEL D. SEITZINGER, MAINE CRIMINAL PRACTICE § 24.4 (1995).

[¶ 13] Parties sometimes use peremptory challenges, intended to supplement challenges for cause, as substitutes or backups when a party believes that the court has improperly denied their for cause challenges. That may be a good strategic choice, but a party is not required to use all necessary peremptory challenges to remove jurors to whom that party had objected for cause or be considered to have

waived the for cause objection on appeal as long as that party has used all her peremptory challenges.

The entry is:

Judgment vacated.

---

tory challenges, so she can complain. *See also, State v. Chattley,* 390 A.2d 472, 476 n. 5 (Me.1978) ("Defendants used all of their peremptory challenges; their argument is, therefore, not barred by the rule in *State v. Albano* ..., which denies a defendant the right to complain of a judge's failure to dismiss a juror for cause if the defendant allows the

juror to sit on the jury even though he had not exhausted all of his peremptory challenges." (citation omitted)); 1 DAVID P. CLUCHEY & MICHAEL D. SEITZINGER, MAINE CRIMINAL PRACTICE (1993) § 24.3 (citing, among others, *State v. Heald,* 443 A.2d 954, 956 n. 4 (Me.1982); *State v. Pelletier,* 434 A.2d 52, 55 (Me.1981)).