2004 ME 119

**William GROVER**

v.

**BOISE CASCADE CORPORATION**

Supreme Judicial Court of Maine.

Argued: April 13, 2004.

Decided: Sept. 15, 2004.

Revised: Oct. 21, 2004.

Stephen B. Wade (orally), Marc N. Frenette, Skelton, Taintor & Abbott, P.A., Auburn, for plaintiff.

Theodore H. Kirchner (orally), Norman, Hanson & DeTroy, L.L.C., Portland, for defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS and LEVY, JJ.

LEVY, J.

[¶ 1] Boise Cascade Corporation appeals from a judgment entered in the Superior Court (Oxford County, *Gorman, J.*) following a jury verdict in favor of William Grover awarding him $440,000 in damages. This is the second appeal in this action, which arose from injuries Grover sustained when he fell off a platform while inspecting a paper machine at Boise Cascade's Rumford mill.[1] Boise Cascade contends that the court erred by: (1) permitting Grover's counsel to question the prospective jurors after the parties exercised their challenges for cause; (2) denying Boise Cascade's motion for a judgment as a matter of law because the evidence was insufficient to sustain the verdict; and (3) excluding evidence of Grover's receipt of workers' compensation and disability benefits. Because the court erred by allowing the examination of jurors after the parties exercised their challenges for cause, we vacate the judgment and remand for a new trial.

## I.  BACKGROUND

[¶ 2] Grover was employed as a sales engineer in 1995 by Tamfelt, a company that manufactures and supplies engineered fabrics for paper machines. Tamfelt serviced Boise Cascade's paper mill in Rumford.

[¶ 3] On the day of his injuries, Grover was at the mill to inspect a papermaking machine. He testified that before he fell, he was either backing up or walking sideways up the stairs to a platform while tracing a vacuum line that ran along the ceiling. The paper machine was on the left side of the stairs and platform. Grover was wearing safety glasses, which have side shields to prevent anything from hitting his eyes. He was also using a flashlight to assist him in seeing the vacuum line.

[¶ 4] After moving up the stairs, he arrived at a platform, the sides of which are usually guarded with safety chains that latch.[2]  Grover began sliding his right

---

1.  *Grover v. Boise Cascade Corp.,* 2003 ME 45, 819 A.2d 322.

2.  Boise Cascade employees had the authority to unlatch the chains to allow them to work on the machines, but they were expected to

hand up along the chain rail on the right side of the stairs. He tripped when he attempted to step around a protruding valve stem and started to fall toward the paper machine, on the left side of the stairs and platform. He reached for the chain railing that should have been latched on the left side of the platform, but it was not there. He stated that he "threw [his] body away from the" machine to avoid being killed, fell to the ground instead of into the machine, and briefly lost consciousness. Grover suffered a brain injury as a result of the fall.

[¶ 5] Grover filed a negligence action against Boise Cascade, claiming that Boise Cascade "inadequately, negligently, and carelessly maintained" the mill by failing to "have adequate handrails and/or guardrails and gating as required by safety regulations" and failing to have adequate lighting. Boise Cascade filed a motion for a summary judgment, which the Superior Court (*Delahanty, J.*) granted. It found that Boise Cascade could not be liable because the danger was obvious to Grover, which precludes liability pursuant to section 343A(1) of the RESTATEMENT (SECOND) OF TORTS (1965).[3] *See Grover v. Boise Cascade Corp.*, 2003 ME 45, ¶ 6, 819 A.2d 322, 323. We vacated the summary judgment because there was a genuine issue of material fact as to whether the dangerous condition, i.e., the unlatched safety chain, was "obvious" to Grover. *Id.* ¶ 7, 819 A.2d at 323–24.

[¶ 6] Prior to the trial, Grover filed a motion in limine seeking permission for attorney-conducted jury voir dire after the

challenges for cause were exercised and before the exercise of peremptory challenges. Grover separately submitted a letter to the court setting forth the proposed areas of questioning and specific questions, and Boise Cascade filed a written objection to Grover's motion. After a hearing, the court granted Grover's motion in limine.

[¶ 7] As the trial commenced, the voir dire unfolded as follows: First, the court conducted voir dire of the jury panel, including questions based on specific requests made by Grover.[4] Second, both parties exercised their challenges for cause. Third, the names of seventeen prospective jurors were drawn from the remaining jurors, and Grover's attorney was then permitted to individually question the prospective jurors for a total of thirty-five minutes. The questioning occurred in the presence of all the prospective jurors.

[¶ 8] Grover's questions centered on each prospective juror's family and employment backgrounds, willingness to award damages for intangible injuries, and willingness to impose liability in the absence of intentional conduct. Boise Cascade renewed its objection to the voir dire process, but did not object to any of the specific questions Grover intended to ask. The questioning of the first prospective juror examined by Grover's attorney is representative of the voir dire that followed:

> Mr. Wade: Just like to start out asking you a couple of questions, if I could. I know that you're a social worker; is that correct?

---

re-latch them when they were finished. Boise Cascade had had a problem in the past with the failure of employees to re-latch the safety chains.

3. "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose

danger is known or obvious to them ...." RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965).

4. The record does not show that Boise Cascade requested any specific questions of the prospective jury panel.

Juror 26: That's correct.

Mr. Wade: Can you tell me what it is about your job that you're particularly good at? What do you think makes you very good at what you do?

Juror 26: Listening.

Mr. Wade: If you could have any job in the world, what would it be?

Juror 26: A social worker with Maine veterans.

Mr. Wade: Is that where you're working now?

Juror 26: That's correct.

Mr. Wade: Do you have children?

Juror 26: Yes, I do.

Mr. Wade: Are they grown?

Juror 26: They are.

Mr. Wade: Do you have grandchildren?

Juror 26: Yes.

Mr. Wade: What—could you give me one or two characteristics that you'd really like to see instilled into your grandchildren?

Juror 26: Same sense of family I instilled in my children.

Mr. Wade: I didn't hear.

Juror 26: Same sense of family I instilled in my children.

Mr. Wade: Thank you very much. Have lawsuits affected anything that you do at your work?

Juror 26: No.

Mr. Wade: My—my mother thinks giving money for pain and suffering doesn't do any good. Other people think it's okay. Can you tell me which way you lean? Are you closer to my mother who doesn't think it does any good, or do you think it's okay?

Juror 26: I think it's okay.

Mr. Wade: Boise Cascade did not hurt Mr. Grover on purpose. Some people say it's not fair to make them pay if what happened was an accident and they didn't do it on purpose. What do you think about that?

Juror 26: I think if it was reasonable cautions taken for all the employees working there, that Boise Cascade would not be liable, not reasonable, then [I would] have to consider that.

Mr. Wade: Have you or any of your family members had a serious head injury or lost consciousness for a period of time?

Juror 26: Yes.

Mr. Wade: Was that you?

Juror 26: Yes.

Mr. Wade: And when was that, sir?

Juror 26: I was four years old.

Mr. Wade: Do you have any problems today from that?

Juror 26: Not that I'm aware of.

Mr. Wade: So you basically survived that okay?

Juror 26: Yes.

Mr. Wade: Great. That's all the questions I have for you.

[¶ 9] After the jury selection process was completed, Boise Cascade made an oral motion for a mistrial, which the court denied. Boise Cascade moved for a judgment as a matter of law after the close of Grover's case, which the court also denied.

[¶ 10] During trial, Boise Cascade sought to admit evidence of Grover's receipt of workers' compensation and disability benefits in connection with Grover's claim for lost future earnings. Boise Cascade wished to establish that Grover was receiving approximately $34,000 a year from his workers' compensation and disability benefits. The purpose of the proposed evidence was to discredit Grover's credibility and show his lack of motivation to seek employment. Boise Cascade argued that "[i]t's clear what we're going to

have here is a claim for future lost earnings and if the claim is going to be that $50,000 a year sets his earning capacity, that he's going to be permitted to testify that he can't do anything except minimum wage." The court excluded the evidence based on M.R. Evid. 403 and the collateral source rule.

[¶ 11] The jury returned a unanimous verdict in favor of Grover, with a damage award of $440,000. After trial, Boise Cascade filed a motion for a new trial based on the voir dire process and the exclusion of the evidence of workers' compensation and disability benefits. The court denied the motion, and this appeal followed.

## II. DISCUSSION

### A. Peremptory Challenges

[¶ 12] We review challenges to jury voir dire for an unsustainable exercise of discretion, mindful that a court has broad discretion over the manner of conducting voir dire. *State v. O'Hara*, 627 A.2d 1001, 1003 (Me.1993). When exercising its discretion, a court must make informed judgments "based upon a foundation of law and reason." *State v. Bowman*, 588 A.2d 728, 730 (Me.1991) (quotation marks omitted). A trial court's interpretation of a civil rule of procedure is subject to plenary review on appeal. *Serv. & Erection Co. v. State Tax Assessor*, 684 A.2d 1, 2 (Me.1996).

[¶ 13] Boise Cascade contends that Maine law does not permit a court or attorneys to conduct a second voir dire prior to the exercise of peremptory challenges of the potential jurors who have not been disqualified for cause, and that the procedure followed here asserted improper influence on the prospective jurors and unnecessarily intruded on their privacy. The process, Boise Cascade argues, violated the concept that jury selection is intended to impanel an impartial jury, and therefore constitutes reversible error.

### 1. Examination of Prospective Jurors

[¶ 14] Title 14, section 1204 provides that once the court has acted on challenges for cause, "[p]eremptory challenges may then be exercised in accordance with court rules." 14 M.R.S.A. § 1204(2) (Supp. 2003).[5] The process for the examination of prospective jurors and the exercise of challenges for cause and peremptory challenges is set forth in M.R. Civ. P. 47. The rule contemplates that the examination of jurors, authorized in subsection (a), will be completed prior to the challenges for cause addressed in subsection (b) and peremptory challenges addressed in subsection (c):

(a) **Examination of Jurors.** The court shall conduct the examination of prospective jurors unless in its discretion it permits the parties or their attorneys to do so. The court shall permit the parties or their attorneys to suggest additional questions to supplement the inquiry and shall submit to the prospective jurors such additional questions as it deems proper, or the court in its discretion may permit the parties or their attorneys themselves to make such additional inquiry as it deems proper.

(b) **Challenges for Cause.** Challenges for cause of individual prospective jurors shall be made at the bench, *at the conclusion of the examination.*

(c) **Peremptory Challenges.**

(1) *Manner of Exercise. After all jurors challenged for cause have been ex-*

---

5. Section 1204 was revised in 2003. *See* P.L. 2003, ch. 299 (effective Sept. 13, 2003). At the time of the trial, section 1204 provided in pertinent part that "[t]he Supreme Judicial Court shall by rule provide the manner of exercising all peremptory challenges, and the number and order of peremptory challenges." 14 M.R.S.A. § 1204 (2003).

*cused,* the clerk shall draw the names of eight prospective jurors and shall draw one additional name for each peremptory challenge allowed to any party by this rule or by the court. Peremptory challenges shall be exercised by striking out the name of the juror challenged on a list of the drawn prospective jurors prepared by the clerk. Any party may waive the exercise of any peremptory challenges without thereby relinquishing the right to exercise any remaining peremptory challenge or challenges to which that party is entitled. If all peremptory challenges are not exercised, the court will strike from the bottom of the list sufficient names to reduce the number of jurors remaining to eight.

(2) *Order of Exercise.* In any action in which both sides are entitled to an equal number of peremptory challenges, they shall be exercised one by one, alternatively, with the plaintiff exercising the first challenge. In any action in which the court allows several plaintiffs or several defendants additional peremptory challenges, the order of challenges shall be as determined by the court.

(3) *Number.* Each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly.

M.R. Civ. P. 47 (emphasis added).

■ [¶ 15] Although the rule does not preclude questions pertaining to peremptory challenges as part of the examination of jurors *preceding* challenges for cause, it does require that the examination of prospective jurors be completed prior to the parties' exercise of their challenges for cause.

■ [¶ 16] The court's broad discretion regarding the manner in which voir dire is conducted, and the type and scope of questions asked, *O'Hara,* 627 A.2d at 1003, is exceeded where, as here, the sequence of the examination of the prospective jurors and the parties' exercise of their challenges for cause and peremptory challenges is contrary to the sequence established by Rule 47. The rule requires that the examination of prospective jurors be completed prior to the exercise of all challenges for cause. Accordingly, the court exceeded the scope of its discretion by permitting Grover to conduct a second round of examination following the exercise of challenges for cause and before the exercise of peremptory challenges.[6]

2. Substance of the Voir Dire Questions

■ [¶ 17] In addition to objecting to the voir dire process, Boise Cascade also challenges the substance of the questions that Grover asked of the prospective jurors, claiming that the questions were "invasive of a juror's privacy" and improperly probed "into [each] individual juror's background and philosophy of life." Grover contends that his questions were aimed at detecting biases and prejudices so that he would have an intelligent and informed basis for exercising his peremptory challenges.[7]

6. Although Rule 47 does not authorize a second round of questioning after the challenges for cause, it does authorize the court to conduct the examination of the prospective jurors and to then "permit the parties or their attorneys themselves to make such additional inquiry as it deems proper." M.R. Civ. P. 47(a).

7. Grover asserts that Boise Cascade failed to preserve this issue at trial by failing to object to the specific voir dire questions that were

[¶ 18] We have previously stated that "[f]or cause and peremptory challenges are different routes to the same end." *State v. Lowry*, 2003 ME 38, ¶ 12, 819 A.2d 331, 335. Both seek to arrive at a qualified jury.

The key consideration on review is not whether any particular question was asked—or who asked it—but whether the voir dire questions, taken as a whole, (a) adequately explore the potential that jurors may have knowledge, bias or predisposition that could compromise their objectivity and qualifications for hearing the case, and (b) encourage and permit jurors to give honest responses to such questions.

Alexander, *Maine Jury Instruction Manual* § 2–5 at 2–6 (4th ed. 2004).

[¶ 19] Questions that have no relationship to a prospective juror's knowledge, bias, or predisposition, or that are intended to advocate a party's position regarding the facts or issues in dispute, are improper. Open-ended voir dire runs the risk that it will be employed less to assess the qualifications of prospective jurors, and more to influence and predispose prospective jurors to a party's point of view.[8] This risk is amplified when the voir dire is conducted in the presence of all prospective jurors.

[¶ 20] Considered as a whole, the voir dire questions posed by Grover were not directed at eliciting information regarding the prospective jurors' qualifications. The question regarding what job the prospective juror would desire if he or she could have any job in the world does not meaningfully illuminate a potential juror's qualifications to serve, but it does intrude on her or his privacy. Similarly, the questions regarding what each prospective juror was particularly good at in their employment, and the characteristics they hoped to instill in their children or grandchildren, were more likely to establish a rapport between Grover's counsel and the prospective jurors by affording them the opportunity to speak positively about themselves in the presence of the other jurors and the court, and less likely to elicit responses that have an actual bearing on a juror's qualifications. The questions soliciting the prospective jurors' views as to whether an award of damages for pain and suffering "does any good" and whether it is "fair" to impose liability for an unintended harm caused the prospective jurors to adopt a position on the law without the benefit of the court's instructions, and without reference to the jurors' duty to apply the law as instructed and not as each juror saw fit.

[¶ 21] Virtually any question posed to a prospective juror may produce a response that will assist a party in making informed decisions regarding the use of peremptory challenges. But questions pertaining to peremptory challenges must,

---

asked. However, Boise Cascade objected in writing to the questions as they were proposed in Grover's in limine motion, and renewed its prior objection at trial. Accordingly, Boise Cascade's objection to both the timing of the voir dire and the substance of the voir dire questions was preserved. *Cf. State v. Poulos*, 1998 ME 43, ¶ 3, 707 A.2d 1307, 1308.

8. *See* Fred Lane, GOLDSTEIN TRIAL TECHNIQUE § 9.03 (3d ed. 1995) (stating that two of the four primary goals of jury voir dire are for the attorney to condition the jurors to the attorney's theory of the case and to establish a rapport with the jury); Douglas M. Bates, Jr., *Voir Dire Examination in Criminal Jury Trials: What is the Proper Scope of Inquiry?*, 70 FLA. BAR J. 64, 64 (1996) (stating, "[d]espite the reasons often cited for allowing extensive voir dire, it is well known that trial attorneys frequently use voir dire for the improper purposes of instructing, educating, cajoling, or predisposing the jury").

like those pertaining to challenges for cause, have as their predominant purpose the eliciting of information consistent with the objective of impaneling a qualified and impartial jury. Parties have a substantial right to have a jury that is free from outside influence, including improper influence resulting from the questions asked as part of the jury voir dire. Here, the predominant purposes served by the questions asked by Grover's attorney—the introduction of key principles of law divorced from judicial instructions and the establishment of juror/attorney rapport—are not consistent with the objective of the voir dire process.

[¶ 22] We conclude that the court engaged in an unsustainable exercise of its discretion established by M.R. Civ. P. 47 by permitting a second round of voir dire questions after the challenges for cause were exercised and by permitting voir dire questions whose predominant purpose was other than eliciting information regarding the prospective jurors' qualifications. Because the process employed affected a substantial right of a party, we vacate the judgment and remand the case for a new trial.[9]

## B. Evidence of Workers' Compensation and Disability Benefits

[¶ 23] Because we vacate the judgment of the Superior Court, we do not reach Boise Cascade's second issue on appeal regarding the denial of its motion for a judgment as a matter of law. We do, however, address the court's exclusion of evidence of workers' compensation and disability benefits because of the likelihood

that the court will revisit the issue on remand.

[¶ 24] Boise Cascade contends that the court erred by excluding evidence of Grover's receipt of workers' compensation and disability benefits pursuant to the collateral source doctrine. The collateral source doctrine provides that "a plaintiff who has received compensation for her damages from sources independent of the tortfeasor remains entitled to a full recovery." *Hoitt v. Hall*, 661 A.2d 669, 673 (Me.1995). The evidence is excluded because of the substantial likelihood of prejudicial impact. *Werner v. Lane*, 393 A.2d 1329, 1337 (Me.1978). However, collateral source evidence may be admissible for purposes other than mitigation of damages that are recoverable from the tortfeasor. *Id.* at 1336.

[¶ 25] Boise Cascade contends that admission of the evidence would prove Grover's lack of motivation to work and would discredit Grover's testimony that, among other things, he had not been working for eight years due to his medical problems. Although the collateral source rule limits the admission of evidence of compensation from a source other than the tortfeasor, it does not prohibit the introduction of such evidence. *See Pierce v. Cent. Me. Power Co.*, 622 A.2d 80, 84 (Me. 1993). It is the trial court's duty to weigh the probative value of such evidence against the danger of unfair prejudice, confusion of issues, or misleading the jury. Here, the court excluded the evidence because it was concerned with opening the case up to ancillary issues that would confuse the jury and would create "a trial within a trial." Although a contrary con-

9. Grover filed a timely cross-appeal and asserts before us that the trial court erred by refusing to instruct the jury on the doctrine of res ipsa loquitur. We do not address this assertion because this matter is remanded, and the trial court will have to determine whether a res ipsa loquitur instruction is supported by the evidence introduced at the new trial.

clusion could also have been sustainable, we cannot say that the trial court engaged in an unsustainable exercise of its discretion when it excluded the proffered evidence.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.