MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 207
Docket:      Sag-17-5
Argued:      September 13, 2017
Decided:     October 17, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

JEFFREY W. ROBY

GORMAN, J.

[¶1]  Jeffrey W. Roby appeals from a judgment of conviction for domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2016), entered by the trial court (Sagadahoc County, *Billings, J.*) after a jury trial.  He argues that the court abused its discretion by not presenting his proposed voir dire questions to the jury pool.  We affirm the judgment.

[¶2]  Viewing the evidence in the light most favorable to the State as the prevailing party, the jury could rationally have found the following facts beyond a reasonable doubt.  *State v. Simons*, 2017 ME 180, ¶ 2, --- A.3d ---.  On July 25, 2016, Roby lived with his sexual partner in her house in Bowdoinham.  During an argument that morning, Roby stomped on his partner's bare left

2

foot and it quickly began to bruise.[1]  After the partner called 9-1-1, Roby was

arrested.  On August 16, 2016, the State charged Roby with domestic violence

assault (Class D), 17-A M.R.S. § 207-A(1)(A), and Roby pleaded not guilty.

[¶3]  The court held jury selection on December 2, 2016.  On that same

date,[2] Roby proposed a questionnaire that asked potential jurors to indicate

their level of agreement with erroneous statements of law regarding criminal

prosecutions.  His proposed questionnaire included the following:

> 1. If a person is arrested for a crime, it is likely they [*sic*] are guilty.
> (Please circle one)
>
> Strongly agree      Agree          Disagree      Strongly disagree
>
> 2. A person accused of a crime should be required to present at
> least some evidence to prove their [*sic*] innocence.  (Please circle
> one)
>
> Strongly agree      Agree          Disagree      Strongly disagree

[¶4]  After discussing Roby's proposed questionnaire with trial counsel,

the court declined to use it but, over the objection of the prosecutor, agreed to

---

[1]  We reject Roby's argument that the evidence was insufficient to establish each element of domestic violence assault beyond a reasonable doubt.  Roby's alternative explanation of the evidence—that a donkey caused the injury—is not "sufficiently credible in light of the entire record that it necessarily raises a reasonable doubt" as to his guilt.  *State v Woodard*, 2013 ME 36, ¶ 23, 68 A.3d 1250 (quotation marks omitted); *see State v. Bruzzese*, 2009 ME 61, ¶ 10, 974 A.2d 311.

[2]  To avoid the kind of last minute decisions that occurred here, all requests for specific voir dire questions or methods should be submitted well in advance of the date for jury selection, so that the court and counsel have adequate time to identify and address any specific bias and prejudice concerns in a manner that avoids misleading or inappropriate questions that could confuse prospective jurors.  *See State v. Simons*, 2017 ME 180, ¶ 22, --- A.3d ---; *see* M.R.U. Crim. P. 24(a).

use a revised version of Roby's questionnaire as part of the jury selection process. The court began jury selection by ordering each member of the pool to complete a confidential questionnaire that asked about his or her experience with domestic violence. After excusing from the pool any individual who answered "yes" to a "disqualifying question" on the questionnaire, the court addressed the remaining members of the jury pool in open court. The court began this portion of the selection process by explaining some of the "responsibilities of jurors and some of the laws, rights and rules that apply to jury service and apply to criminal cases."

[¶5] After completing this instruction, the court ordered the members of the jury pool to complete the revised questionnaire, which contained six questions concerning the topics addressed by the court in its preliminary remarks. The record contains no information about the results generated by that questionnaire, except that the court excused sixteen members of the jury pool "based upon the answers."

[¶6] Next, before any additional questioning occurred, the State challenged multiple jurors for cause, pursuant to M.R.U. Crim. P. 24(b), due to their respective criminal records. Roby objected to only two of the State's

4

challenges and the court granted all the State's requests to strike particular individuals from the panel.

[¶7]  The court then continued with "routine" voir dire questions that allowed Roby and the State to determine whether any members of the jury pool knew the lawyers, the witnesses, or Roby; knew or were related to each other; or were involved in or have family members in law enforcement positions.  Any positive response caused the court to ask some follow-up questions to provide counsel with additional information about the juror's knowledge or connection.  After completing the follow-up questions, the court always asked whether the prospective juror believed that he or she could be fair and impartial.

[¶8]  Thereafter, the State reported that it had no additional challenges for cause.  M.R.U. Crim. P. 24(b).  Roby made two challenges for cause.  The court granted one, and denied the other.  After that portion of the process, the court asked both attorneys whether they were "satisfied with proceeding with the folks on this list."  Both attorneys answered affirmatively.

[¶9]  Ultimately, the voir dire yielded twelve jurors and two alternates. Roby told the court that the impaneled jury was acceptable to him.  On December 22, 2016, the court held a jury trial, and the jury returned a guilty

verdict. Roby appeals from the resulting judgment of conviction. *See* M.R. App. 2(b) (Tower 2016); 15 M.R.S. § 2115 (2016).

[¶10] Roby argues that the court's rejection of his first proposed questionnaire denied him the right to a fair and impartial jury. *See* Me. Const. art. I, § 6; *State v. Libby*, 485 A.2d 627, 629 (Me. 1984). He asserts that—although there is no evidence of any juror's bias—his questions as proposed were the best means of determining whether the jurors were truly impartial.

[¶11] "We review challenges to the court's conduct of voir dire for abuse of discretion." *State v. Lowry*, 2003 ME 38, ¶ 7, 819 A.2d 331. As we have reiterated on multiple occasions, the purpose of the voir dire process "is to detect bias and prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible." *Id.* (quotation marks omitted); *State v. O'Hara*, 627 A.2d 1001, 1003 (Me. 1993); *State v. Lovely*, 451 A.2d 900, 901 (Me. 1982). We have also explained that voir dire "[q]uestions that have no relationship to a prospective juror's knowledge, bias, or predisposition, or that are intended to advocate a party's position regarding the facts or issues in dispute, are improper." *Grover v. Boise Cascade Corp.*, 2004 ME 119, ¶ 19, 860 A.2d 851; *see Simons*, 2017 ME 180, ¶ 22, --- A.3d ---.

[¶12]  In order to select a qualified and impartial jury, the trial court has "[c]onsiderable discretion over the conduct and scope of juror voir dire," because it is the trial court that "has the responsibility of balancing the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors." *State v. Woodburn*, 559 A.2d 343, 344 (Me. 1989); *see* M.R.U. Crim. P. 24(a).

[¶13]  We conclude that the court did not abuse its discretion in its orchestration of voir dire.  *Simons,* 2017 ME 180, ¶ 21, --- A.3d ---.  Although the court did not—and was not required to—"voir dire the jury in the exact manner requested by" Roby, *State v. Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074, the court ensured that the voir dire process was "sufficient to disclose facts that would reveal juror bias."  *Lowry*, 2003 ME 38, ¶ 11, 819 A.2d 331; *see Simons*, 2017 ME 180, ¶ 21, --- A.3d ---.  The questions and the methods used by the court addressed virtually all of Roby's concerns, including the jurors' experience with domestic violence, Roby's constitutional rights as a criminal defendant, and potential law enforcement biases.

[¶14]  The court acted well within its discretion in declining to use a questionnaire containing "utterly incorrect statement[s] of law and ask[ing] jurors to agree or disagree with the policy pronouncement[s] contained

therein." *Simons*, 2017 ME 180, ¶ 22, --- A.3d ---. As the court properly determined, "questions that cause the prospective jurors to adopt a position on the law without the benefit of the court's instructions . . . are *not* appropriate questions." *Id.* (quotation marks omitted).

The entry is:

Judgment affirmed.

---

James M. Mason, Esq. (orally), Handelman & Mason LLC, Brunswick, for appellant Jeffrey W. Roby

Jonathan R. Liberman, District Attorney, and Alexander R. Willette, Asst. Dist. Atty. (orally), Office of the District Attorney, Bath, for appellee State of Maine

Sagadahoc County Unified Criminal Docket docket number CR-2016-632
FOR CLERK REFERENCE ONLY