MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2019 ME 169
Docket:      Pen-18-401
Argued:      November 5, 2019
Decided:     December 19, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ANTOINNE BETHEA

ALEXANDER, J.

[¶1]   Antoinne Bethea appeals from a judgment of conviction of manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2018), entered by the trial court (Penobscot County, *A. Murray, J.*) following a jury trial on an indictment for murder, 17-A M.R.S. § 201(1)(A) (2018).  Bethea asserts that the trial court (1) erred in its conduct of voir dire by crafting race-related questions for potential jurors but not using questions proposed by Bethea; (2) abused its discretion by admitting a photograph of the victim with his son; and (3) abused its discretion by only giving a curative instruction after the prosecutor misstated the evidence during closing arguments.  We affirm the judgment.

# I. CASE HISTORY

## A.    Facts

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could have found the following facts beyond a reasonable doubt.  *See State v. Nobles*, 2018 ME 26, ¶ 2, 179 A.3d 910.

[¶3]  On Easter weekend 2017, the victim and a friend traveled to Bangor. The victim's eight-year-old son lived in Bangor with his mother—the victim's ex-wife—and Bethea.  While they were together that weekend, the son told his father that Bethea had been cooking "white stuff" in the apartment and that the white stuff gave him a headache.  The victim's friend understood the "white stuff" to be crack cocaine.

[¶4]  After hearing this story from his son, the victim sent several text messages to his ex-wife.  Bethea interpreted those text messages as threatening.  Bethea and the victim's ex-wife drove to her father's home, where Bethea retrieved a handgun he had kept hidden there.  When Bethea and the victim's ex-wife returned to their apartment, they saw the victim and his friend standing in the driveway.  The victim and his friend were waiting for the victim's son to change his clothes inside.  Bethea and the victim spoke briefly

before Bethea entered the apartment. Bethea testified that he showed his handgun to the victim's friend as he walked up the stairs to his apartment.

[¶5] Shortly after Bethea returned outside, he started a fight with the victim. During the fight, the victim's friend saw Bethea reach for his handgun. The friend then jumped on Bethea, and the three fell to the ground. While they were on the ground, Bethea discharged his firearm twice. The shots struck the victim, causing his death.

[¶6] Bethea quickly left the scene and cut off his dreadlocks. Bethea also gave an acquaintance an object wrapped in a sock, which the acquaintance buried in the woods. The object inside the sock was the handgun used in the shooting, which law enforcement eventually recovered.

B.    Procedural History

[¶7] On April 18, 2017, Bethea was charged by criminal complaint with murder. *See* 17-A M.R.S. § 201(1)(A). He was arrested in Ohio on May 21, 2017. Following his arrest, Bethea was indicted and, on arraignment, pleaded not guilty. A jury trial was held in August 2018.

[¶8] The court used a written questionnaire as part of its voir dire of potential jurors. Following best practice, *see State v. Roby*, 2017 ME 207, ¶ 3 n.2, 171 A.3d 1157, the court and counsel initially met more than a week

4

prior to the start of jury selection for an extensive discussion of proposals for the written questionnaire. The day before the start of jury selection, the court and the parties met again to finalize the questionnaire. At these conferences, Bethea proposed that the court include in the written questionnaire certain questions designed to identify possible racial biases held by potential jurors. Bethea also proposed that each question have answer choices of "YES," "NO," or "NOT SURE." The questions proposed by Bethea included the following:

18. Do you believe or feel African-American men are more likely to commit crimes when they come to Maine than people of other races visiting Maine?

21. Have you ever experienced or witness[ed] anyone being treated badly because of his or her race?

22. Have you ever had any positive or negative interactions with a person of another race?

23. Do you have any negative views of people of the African-American race?

24. Have you, or any of your family members or close friends[,] ever used derogatory words to describe a person of another race, such as [the N-word] in referring to African-Americans?

[¶9] In response to Bethea's request, the court amended its questionnaire to include two additional questions. With the amendments, the questionnaire used by the court, with answer choices of only "YES" or "NO," asked the following questions about race:

22.     Would the fact that Mr. Bethea is an African-American/black male from New Haven, Connecticut have any effect on your ability to be a fair and impartial juror?

23.     Would the fact that the deceased . . . was an African-American/black male from New Orleans, Louisiana have any effect on your ability to be a fair and impartial juror?

24.     There may be additional evidence that other people involved in this case are African American/black and/or from out of state. Would any of these facts have any effect on your ability to be a fair and impartial juror?

25.     Do you have any negative views or have you had any negative experiences with people who are African-American/black?

26.     If you answered "yes" to question 25 above, would that affect your ability to be fair and impartial if you are selected as a juror in this case?

[¶10]  Prior to individual voir dire, the court excluded any potential juror whose answers to these questions indicated that he or she might not be impartial on race-related issues.  During individual voir dire, the court asked each potential juror to explain in more detail his or her affirmative responses to other questions on the questionnaire.  The court permitted the attorneys for the State and for Bethea to ask follow-up questions to the potential jurors. During oral argument on this appeal, Bethea's counsel indicated that the court did not restrict the scope of the follow-up questions that could be asked or prohibit the attorneys from asking any particular question.

6

C.     Issues Arising at Trial

[¶11]  Before trial, the State informed the court of its intent to offer three photographs depicting the victim and the victim's son.  Bethea objected on relevancy and Rule 403 grounds, and the court ruled that the State could select one photograph to admit.[1]  When the victim's son testified, the State moved to admit en masse the State's Exhibits 1 through 55, one of which was the photograph at issue.  The court asked Bethea if he objected to any of the offered exhibits.  Bethea responded that he had no objection.  The State showed the photograph to the victim's son, who identified himself and his father as the two individuals shown.  Following this use of the photograph, it was not displayed or referenced again during the trial.  On appeal, Bethea contends that the photograph was irrelevant to any issue at trial and, alternatively, that the court abused its discretion in admitting the photograph over his Rule 403 objection.

[¶12]  During the State's rebuttal in closing argument, the prosecutor said: "[The victim's friend] testified last week that the defendant went up the stairs, and when he went up the stairs, he showed the gun."  In fact, it was

---

[1]  The State argues that the admitted photograph was probative to substantiate the victim's friend's testimony that he and the victim visited Maine to spend Easter with the victim's son.  The State contends that this fact was material to counter Bethea's suggestion that the two traveled to Maine only to sell drugs—which would have damaged the friend's credibility as a witness.

Bethea himself, not the friend, who testified that Bethea showed the friend a gun.[2] In making the statement at issue, the prosecutor appeared to be drawing parallels between the friend's and Bethea's testimony in an effort to convince the jury that, even if it believed Bethea's testimony, it should also believe the testimony of the friend. Bethea objected, pointing out the prosecutor's misstatement. Bethea argues that the prosecutor impermissibly enhanced the credibility of the victim's friend by downplaying an apparent inconsistency in the friend's testimony.

[¶13] Following Bethea's objection, as part of its overall instructions, the court instructed the jury as follows:

> [T]he opening statements and the closing arguments of the attorneys are not evidence. In their arguments, they have suggested to you particular ways that you might want to analyze the evidence, and they have argued various conclusions and inferences that you might want to draw from the evidence. But the opening statements and the closing statements themselves are not evidence.
>
> If, once you begin your deliberations, your memory of the evidence is different from their memory, it is your memory that controls. And I understand that counsel in this case may disagree about what the other one may have said to you in closing arguments. So, again, I want to emphasize for you that it is your memory that controls—

---

[2] The defense also impeached the friend's testimony that Bethea had not shown him the gun by introducing the friend's prior inconsistent statement made to a law enforcement officer shortly after the shooting. The friend told the police officer that Bethea *had* shown him the gun prior to the physical altercation.

your memory of the evidence that controls your decision in this case.

[¶14] By its verdict at the end of the seven-day trial, the jury acquitted Bethea of murder but found him guilty of the lesser-included offense of manslaughter. The court sentenced Bethea to twenty-six years' imprisonment with all but eighteen years suspended, followed by four years of probation. Bethea timely appealed the resulting judgment. *See* M.R. App. P. 2B(b)(1).

## II.  LEGAL ANALYSIS

### A.    Voir Dire

[¶15] Bethea asserts that the trial court's conduct of voir dire was not sufficient to identify racial bias among potential jurors and that he was therefore denied his constitutional right to a fair trial.[3] Specifically, Bethea contends that the court abused its discretion in declining to include on the juror questionnaire the five questions he requested because (1) the State presented evidence related to his dreadlocks and (2) Bethea testified that he attempted to

---

[3] Bethea also argues that the trial court abused its discretion in declining to include an answer choice of "not sure" for the questions on the juror questionnaire. The trial court is not required to allow a "not sure" answer or any other third choice for answers to jury questionnaires. *See State v. Burton*, 2018 ME 162, ¶¶ 18-19, 198 A.3d 195 (holding that a trial court did not abuse its discretion by declining to provide an answer choice of "not sure" in addition to "yes" and "no" on a juror questionnaire); *State v. Roby*, 2017 ME 207, ¶¶ 3, 10-14, 171 A.3d 1157 (explaining that the trial court properly declined to use a questionnaire that asked if jurors "strongly agree," "agree," "disagree," or "strongly disagree" with certain policy propositions); *see also State v. Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074 (explaining that the court is not required to "voir dire the jury in the exact manner requested by" a party).

elude law enforcement—even though he believed the shooting was justified—because he was afraid that, as a black man, he would not be treated fairly by the police. According to Bethea, these facts made race a key issue at trial such that the court's voir dire process was constitutionally deficient.

[¶16] We review the trial court's conduct of voir dire for an abuse of discretion, affording the trial court "considerable discretion over the conduct and scope of juror voir dire." *Roby*, 2017 ME 207, ¶ 12, 171 A.3d 1157. "[T]he purpose of voir dire is to detect bias and prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible." *Id*. ¶ 11 (quoting *State v. Lowry*, 2003 ME 38, ¶ 7, 819 A.2d 331). The trial court is not required to conduct voir dire precisely in the manner requested by a defendant so long as the voir dire process is "sufficient to disclose facts that would reveal juror bias." *Lowry*, 2003 ME 38, ¶ 11, 819 A.2d 331; *see State v. Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074.

[¶17] The court's conduct of voir dire here was "sufficient to disclose facts that would reveal" racial bias among potential jurors. *Lowry*, 2003 ME 38, ¶ 11, 819 A.2d 331. The juror questionnaire included five questions designed to uncover racial bias. These questions overlapped significantly with those proposed by Bethea. Question 25, which the court added in response to

Bethea's request for additional inquiry on racial prejudice, is essentially a combination of Bethea's proposed questions 22 and 23.  Similarly, the court's question 22 covers the same ground as Bethea's proposed question 18; both probed the potential jurors' respective abilities to be impartial when deciding the guilt or innocence of a black man from out of state.  The court did not abuse its discretion in declining to word its questions precisely as Bethea requested. *See Roby*, 2017 ME 207, ¶ 13, 171 A.3d 1157; *Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074.

[¶18]  The trial court's decision to not ask Bethea's proposed questions 21 and 24 was appropriate because the court's voir dire process, taken as a whole, adequately probed potential jurors for racial biases.  "The key consideration on review is not whether any particular question was asked—or who asked it—but whether the voir dire questions, taken as a whole, (a) adequately explore the potential that jurors may have knowledge, bias or predisposition that could compromise their objectivity and qualifications for hearing the case, and (b) encourage and permit jurors to give honest responses to such questions." *Maine Jury Instruction Manual* § 2-4G at 2-17 (2018-2019 ed.).

[¶19]  Here, the court included five questions related to race on the questionnaire, incorporating some of Bethea's suggestions; excused any juror whose answers to those questions suggested any racial bias; and permitted Bethea to ask follow-up questions to potential jurors during individual voir dire.  The trial court thus thoroughly probed the issue of racial bias and acted within its discretion in its conduct of voir dire.  *See Collin*, 1999 ME 187, ¶ 8, 741 A.2d 1074 (permitting the use of "voir dire queries which addressed potential juror bias more generally than the defendant wished"); *Roby*, 2017 ME 207, ¶ 13, 171 A.3d 1157 (holding that a trial court did not abuse its discretion where the court's conduct of voir dire "addressed virtually all of [the defendant's] concerns").

B.     Photograph of Victim with Son

[¶20]  Bethea next argues that the court erred or abused its discretion in admitting a photograph of the victim and his son while the victim was alive. Bethea contends that the photograph served only to garner sympathy for the victim and therefore was irrelevant and unfairly prejudicial.

[¶21]  Because the issue was addressed before trial, we consider Bethea's objection to the photograph properly preserved here, even though he offered no objection when the photograph was admitted together with the State's other

exhibits.  *See* M.R. Evid. 103(e) ("A pretrial objection to or proffer of evidence must be timely renewed at trial unless the court states on the record, or the context clearly demonstrates, that a ruling on the objection or proffer is final."); *State v. Thomes*, 1997 ME 146, ¶¶ 6-7, 697 A.2d 1262; Field & Murray, *Maine Evidence* § 103.7 at 28-29 (6th ed. 2007).

[¶22]  A photograph is admissible if (1) it is an accurate depiction;[4] (2) it is relevant; and (3) its probative value is not substantially outweighed by its prejudicial effect.  *See State v. Allen*, 2006 ME 21, ¶ 10, 892 A.2d 456.  Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and . . . [t]he fact is of consequence in determining the action."  M.R. Evid. 401.  We review a ruling on relevancy for clear error.  *See State v. Michaud*, 2017 ME 170, ¶ 8, 168 A.3d 802.  A trial court has discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  M.R. Evid. 403; *see Michaud*, 2017 ME 170, ¶ 8, 168 A.3d 802.

[¶23]  As part of his trial strategy, Bethea suggested that the victim and his friend had come to Maine not to visit the victim's son but to engage in illegal drug dealing.  The photograph showed the victim with his son on the weekend

---

[4] Bethea does not challenge the accuracy of the photograph.

in question. This fact was relevant to negate Bethea's suggestion that the victim and his friend came to Maine only to sell drugs. Bethea has not demonstrated that the trial court clearly erred in admitting the photograph to show the relationship between the victim and his son.

[¶24] We likewise conclude that the court acted within its discretion in overruling Bethea's Rule 403 objection. The photograph did not play a significant role at trial. It was shown to the victim's son on the first day of trial and never seen or referenced again. The trial court reasonably determined that, in the context of a seven-day trial, the photograph would have little or no prejudicial effect. Bethea has failed to demonstrate that the court's decision was an abuse of discretion.

C.      Prosecutor's Misstatement

[¶25] Bethea argues that the State committed prosecutorial misconduct when the prosecutor recited a fact not in evidence during closing rebuttal argument. Bethea objected to the prosecutor's misstatement. "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct . . . and, if so, whether the trial

14

court's response remedied any prejudice resulting from the misconduct . . . ."[5]
*State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citations omitted). When the
State makes a misstatement or commits misconduct at trial and the defendant
objects, the State carries the burden of persuasion on appeal. *See id.* ¶ 34.

[¶26] In reviewing a judgment entered after a jury's verdict, we generally
defer to the determination of the trial judge, "who has the immediate feel of
what is transpiring, that a curative instruction will adequately protect against"
the jury's consideration of a misstatement by the prosecutor. *Id.* ¶ 32. "Only
where there are exceptionally prejudicial circumstances or prosecutorial bad
faith will a curative instruction be deemed inadequate to eliminate prejudice."
*Id.* (quoting *State v. Bennett*, 658 A.2d 1058, 1063 (Me. 1995)); *see State v.
Winslow*, 2007 ME 124, ¶ 24, 930 A.2d 1080.

[¶27] Any prejudice to Bethea caused by the prosecutor's misstatement
was remedied by the trial court's appropriate curative instruction, which
emphasized the jury's responsibility to rely on its own recollection of the
evidence. *See State v. Scott*, 2019 ME 105, ¶ 34, 211 A.3d 205 (holding that a
similar curative instruction was sufficient to remedy any prejudice to the

---

[5] The State concedes that, during its closing rebuttal argument, the prosecutor was mistaken on the relevant fact and thus recited a fact not in evidence.

defendant from a prosecutor's minor misstatement). We presume the jury followed this instruction. *See State v. Tarbox*, 2017 ME 71, ¶ 18, 158 A.3d 957.

[¶28] There is no indication that the prosecutor misstated the evidence in bad faith. Nor did the prosecutor's misstatement create the sort of "exceptionally prejudicial circumstances" that could not be remedied by a curative instruction. *Winslow*, 2007 ME 124, ¶ 24, 930 A.2d 1080. When making the statement at issue, the prosecutor was explaining to the jury that the friend's testimony was mostly consistent with Bethea's. The prosecutor detailed six other facts to which both the friend and Bethea testified. Therefore, even without the statement at issue, the prosecutor's point still stood that the friend and Bethea gave corroborative testimony in several important respects. For these reasons, the trial court's curative instruction adequately remedied any prejudice to Bethea.

The entry is:

Judgment affirmed.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Antoinne Bethea

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2017-1381
FOR CLERK REFERENCE ONLY